**TEMPO TRUCKING AND TRANSFER CORPORATION, Plaintiff,**

v.

**G. R. DICKSON, Acting Commissioner of Customs, U. S. Customs Service, Department of the Treasury of the United States, Defendant.**

**No. 75 C 1208.**

United States District Court,
E. D. New York.

Dec. 19, 1975.

508

Marvin H. Wolf, Groman, Wolf & Ross, P.C., Carle Place, N. Y., for plaintiff.

David G. Trager, U. S. Atty., E.D. N.Y., by Douglas J. Kramer, Asst. U. S. Atty., for defendant.

## MEMORANDUM AND ORDER

BRAMWELL, District Judge.

This is an action to review a final decision of the Acting Commissioner of Customs, revoking plaintiff's customhouse cartman's license. Jurisdiction is asserted under 28 U.S.C. § 1346, 28 U.S. C. § 1355, and 5 U.S.C. § 701 *et seq.* Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of The Federal Rules of Civil Procedure.

Plaintiff Tempo Trucking and Transfer Corporation (hereinafter referred to as "Tempo") is engaged in the operation of a licensed and bonded trucking concern at the John F. Kennedy International Airport. Tempo was issued a customhouse cartman's license by the United States Customs Service, Department of The Treasury on June 29, 1964. The license authorizes Tempo to receive and transport bonded merchandise which has been entered and examined for customs purposes.[1]

On February 15, 1972, a carton containing jewelry was transported from Montreal to the J.F.K. Airport via Air Canada. The carton was to be picked up by Tempo at Air Canada and delivered to Pan American World Airways, Inc., which thereafter was to transport it to Paris (Govt. Ex. 8; Minutes of Administrative Hearing,[2] at 64, 93, 105). At approximately 10:00 A.M. on February 28, 1972, Tempo employee Thomas Rupa picked up the carton at Air Canada and delivered it to the Tempo warehouse (Tr. 71, 82). At about 2:45 P.M. Tempo employee Frank Elia attempted to deliver the carton to Pan American. At that time Cargo Service Supervisor Robert Duscek refused to accept the carton on behalf of Pan American, finding that it was slit open and appeared to contain a cinderblock (Tr. 117, 120–123). At approximately 9:00 P.M. two Tempo employees attempted to deliver the same carton to Pan American. Pan American employee William Barry rejected the carton and thereafter notified agents of the United States Customs Service (Tr. 143, 144).

By letter dated December 23, 1974, Area Director of Customs, George F. Dunn notified Tempo of his intention to revoke its customhouse cartman's license for violations of 19 C.F.R. § 112.-30(a)(5) and (a)(9) (Govt. Ex. 1).[3]

---

1. The Customs regulations providing for the licensing of cartmen are set forth in 19 C. F.R. § 112. These regulations are authorized by 19 U.S.C. §§ 66, 1551a, 1565, and 1624.

2. Hereinafter referred to as "Tr.".

3. The Area Director's letter provided in part as follows:

Please take notice that Section 112.30(a) provides that the district director may revoke or suspend the license of a cartman or lighterman if:

(5) The holder of such a license or an officer or a corporation holding such a license is convicted of a felony, or is convicted of a misdemeanor involving theft, smuggling, or a theft-connected crime;

(9) The holder is guilty of any negligence, dishonest or deceptive practices or carelessness in the conduct of his business.

Pursuant thereto I propose to revoke your Customhouse Cartman's License No. 1711 on the following grounds:

(1) That Anthony Garite an officer of your corporation on May 4, 1973 was convicted of a theft-connected misdemeanor in the United States District Court for the Eastern District of New York, to wit, violating T–18, U.S.C. 659, in that on or about February 28, 1972 he did knowingly have in his possession goods of a value under one hundred dollars ($100.00), that is, jewelry, which had been embezzled and stolen while said goods were moving as, were part of, and constituted a foreign shipment of freight, express and other property from Canada to France, then knowing the said goods to have been embezzled and stolen.

(2) That you were guilty of dishonest and deceptive practices in the conduct of your business in that on February 28, 1972 Anthony Garite, an officer of your corporation deceptively affixed Customs Warning Labels to a carton of merchandise without authorization.

Plaintiff's counsel, by letter dated December 30, 1974, filed a notice of appeal and requested a hearing (Govt. Ex. 2). A hearing was held before Hearing Officer Carl F. Nolte, Jr. on January 23, 1975 pursuant to 19 C.F.R. § 112.30(D). On March 14, 1975, the Hearing Officer transmitted his findings and conclusions to the Acting Commissioner of Customs, recommending that the license be revoked. By letter of decision dated July 9, 1975, the Acting Commissioner of Customs revoked Tempo's license effective July 31, 1975 (Complaint, Ex. "A"). On July 28, 1975, this Court issued a Temporary Restraining Order enjoining, *inter alia,* the revocation of Tempo's license. By stipulation filed August 7, 1975, the TRO was extended until there was a determination regarding Tempo's application for a preliminary injunction. This Court denied the application for a preliminary injunction in an order entered September 23, 1975.[4]

Plaintiff seeks to overturn the determination of the Acting Commissioner of Customs on three grounds: (1) The Hearing Officer erred by failing to explore the facts and circumstances underlying the conviction of Tempo's president Anthony Garite as he was convicted on the basis of an "Alford" plea; (2) There was insufficient evidence that Tempo was guilty of any deceptive practices; and (3) The Hearing Officer, under the circumstances of this case, abused his discretion in denying Tempo's request for an adjournment of the administrative hearing.

## JURISDICTION

■■ Plaintiff asserts that jurisdiction may be predicated under 28 U.S.C. § 1346. Under the Tucker Act, 28 U.S.

C. § 1346(a)(2), a district court has jurisdiction only over claims against the United States for money damages. *Richardson v. Morris,* 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973); *R. E. D. M. Corporation v. LoSecco,* 291 F. Supp. 53 (S.D.N.Y.1968), *aff'd* 412 F.2d 303 (2d Cir. 1969); *Wells v. United States,* 280 F.2d 275 (9th Cir. 1960); *Clay v. United States,* 93 U.S.App.D.C. 119, 210 F.2d 686 (1953), *cert. denied,* 347 U.S. 927, 74 S.Ct. 530, 98 L.Ed. 1080 (1954); *see generally* 1 Barron and Holtzoff, Federal Practice and Procedure (Wright ed.): Civil § 54. Plaintiff makes no claim for money damages here but rather seeks judicial review of an administrative determination revoking its license. Thus, plaintiff can not properly invoke the Tucker Act as a jurisdictional predicate.

■ Plaintiff further claims that jurisdiction exists under 28 U.S.C. § 1355. This statute provides that district courts have original jurisdiction "of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture". *See generally* 1 Barron and Holtzoff, Federal Practice and Procedure (Wright ed.): Civil § 44. Having been unable to find any authority in support of plaintiff's contention, this Court concludes that 28 U.S.C. § 1355 does not confer jurisdiction.

Although the Tariff Act of 1930 does not expressly provide for judicial review of an order revoking a *customhouse cartman's* license,[5] plaintiff contends that the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (hereinafter "A. P.A."), confers jurisdiction upon this Court to review such a determination. The A.P.A. provides in relevant part:

---

4. This Court denied plaintiff's motion for a preliminary injunction having found it unlikely that plaintiff would succeed on the merits. *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973); *Columbia Pictures Industries, Inc. v. American Broadcasting Companies, Inc.,* 501 F.2d 894, 897 (2d Cir. 1974); The instant memorandum opinion shall con-stitute this Court's findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

5. It is noteworthy that 19 U.S.C. § 1641(b) expressly provides for an appeal to the United States Court of Appeals from any order of the Secretary of the Treasury suspending or revoking the license of a customhouse broker.

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. 5 U.S.C. § 702.

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action . . . in a court of competent jurisdiction. 5 U.S.C. § 703.

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. 5 U.S.C. § 704.

It is only the introductory clause of section 10 of the A.P.A. which purports to place limitations on the right to judicial review. The introductory clause excludes administrative action from judicial review to the extent that "statutes preclude judicial review", or "agency action is committed to agency discretion by law." 5 U.S.C. § 701.

█ First, a statute must demonstrate clear and convincing evidence of an intent to preclude judicial review before courts will cut off an aggrieved party's right to be heard.[6] This Court has found no clear and convincing evidence in the Tariff Act of 1930 or in its legislative history indicating that Congress intended to preclude judicial review of an order revoking the license of a customhouse cartman. Second, the agency discretion exception to the general rule that agency action is reviewable under the A.P.A. is a narrow one, and is only "applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply' (citation omitted)." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). *See Adams v. Richardson*, 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973). Here the grounds for the suspension or revocation of a cartman's license as set forth in 19 C.F.R. § 112.30(a) are sufficiently specific to permit judicial review.

██ This Court is mindful of the fact that neither the Tariff Act of 1930 nor the applicable Customs regulations provide for judicial review of an order revoking a cartman's license. However, where a statute does not specifically provide for judicial review, "nonstatutory judicial review" is still available.[7] *Aquavella v. Richardson*, 437 F.2d 397, 402 (2d Cir. 1971). Thus, having eliminated the exceptions to the presumption of reviewability set forth in the introductory clause of section 10, it would ap-

---

6. In *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 156–157, 90 S.Ct. 827, 831, 25 L.Ed.2d 184 (1970), the Supreme Court quoted from the legislative history of the A.P.A. as follows: The statutes of Congress are not merely advisory when they relate to administrative agencies, any more than in other cases. To preclude judicial review under this bill a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review. H.R.Rep. No. 1980, 79th Cong., 2d Sess., 41.
*See also Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

7. In the words of one commentator, "[n]onstatutory review of federal adminis-

trative action refers to judicial review that is not obtained under a specific statutory review provision; it includes review proceedings that seek specific relief against a federal officer by injunction, mandamus, habeas corpus, or other common law remedies." Cramton, Nonstatutory Judicial Review of *Federal Administrative Action: The Need For Statutory Reform of Sovereign Immunity, Subject Matter Jurisdiction, and Parties Defendant*, 68 Mich.L.Rev. 389, 394–395 (1970). *See* Jacoby, *The Effect of Recent Changes in The Law of "Nonstatutory" Judicial Review*, 53 Georgetown L.J. 19 (1964); Byse and Fiocca, *Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action*, 81 Harv.L.Rev. 308 (1967).

pear that the A.P.A. affords the plaintiff a right to judicial review of the decision revoking its license.

The remaining question is whether the A.P.A. provides an independent basis for federal jurisdiction. The Second Circuit has not provided a conclusive answer to this question.[8] Indeed, this issue has produced a split of authority throughout the country.[9] Given the plethora of scholarly opinion on the subject, it would not appear to be profitable to attempt to review the numerous arguments on both sides of the issue. This Court is guided by the legislative history of the A.P.A. which does not provide a conclusive answer to the jurisdictional question but does indicate that Congress intended to afford a broad right of judicial review. In *Citizens Committee For Hudson Valley v. Volpe, supra,* 425 F.2d at 102, the Second Circuit stated:

> There can be no question at this late date that Congress intended by the Administrative Procedure Act to assure comprehensive review of "a broad spectrum of administrative actions," including those made reviewable by specific statutes without adequate review provisions as well as those for which no review is available under any other statute. *Abbott Laboratories v. Gardner, supra,* 387 U.S. [136] at 140, 87 S.Ct. 1507 [18 L.Ed. 2d 681]; *see* S.Rep. No. 752, 79th Cong. 1st Sess., 26 (1945); H.R.Rep. No. 1980, 79th Cong. 2d Sess., 41 (1946).

Were this Court to hold that the A.P.A. does not provide an independent grant of federal jurisdiction, it would frustrate "the important goal of subjecting final agency action to judicial scrutiny." 425 F.2d at 102. This Court therefore concludes that the A.P.A. provides it with jurisdiction to review the order of the Acting Commissioner of Customs.

### STANDARD OF REVIEW

At the outset this Court must determine the proper standard of judicial review. Section 10(e) of the A.P.A., 5 U.S.C. § 706, provides that a reviewing court shall:

. . . . . .

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or]

8. *See Ove Gustavsson Contracting Co. v. Floete,* 278 F.2d 912 (2d Cir. 1960), *cert. denied,* 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188 (1960); *Cappadora v. Celebrezze,* 356 F.2d 1 (2d Cir. 1966); *Toilet Goods Assoc. v. Gardner,* 360 F.2d 677 (2d Cir. 1966), *aff'd,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed. 2d 697 (1967); *Citizens Committee For Hudson Valley v. Volpe,* 425 F.2d 97 (2d Cir. 1970), *cert. denied,* 400 U.S. 949, 91 S. Ct. 237, 27 L.Ed.2d 256 (1970); *Aquavella v. Richardson, supra; Mills v. Richardson,* 464 F.2d 995 (2d Cir. 1972); *Aguayo v. Richardson,* 473 F.2d 1090 (2d Cir. 1973).

9. The cases holding that the A.P.A. does provide an independent grant of federal jurisdiction include: *Davis v. Romney,* 355 F. Supp. 29 (E.D.Pa.1973), *aff'd in part,* 490 F.2d 1360 (3d Cir. 1974); *Ortego v. Weinberger,* 516 F.2d 1005 (5th Cir. 1975); *Rothman v. Hospital Service of Southern California,* 510 F.2d 956 (9th Cir. 1975); *Moore-McCormack Lines, Inc. v. United States,* 413 F.2d 568, 188 Ct.Cl. 644 (1969); *School Board of Okaloosa County v. Rich-* ardson, 332 F.Supp. 1263 (N.D.Fla.1971); *Lyons v. Weinberger,* 376 F.Supp. 248 (S. D.N.Y.1974). The cases answering this question in the negative include: *Grant v. Hogan,* 505 F.2d 1220 (3d Cir. 1974); *International Federation of Professional and Technical Engineers, Loc. No. 1 v. Williams,* 389 F.Supp. 287 (E.D.Va.1974), *aff'd* 510 F.2d 966 (4th Cir. 1975); *Bramblett v. Desorby,* 490 F.2d 405 (6th Cir. 1974); *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529 (8th Cir. 1967); *Yahr v. Resor,* 339 F.Supp. 964 (E. D.N.C.1972). It is noteworthy that some courts have relied upon the sovereign immunity doctrine in holding that the A.P.A. does not afford an independent jurisdictional keystone. The Second Circuit disposed of this problem in *Kletschka v. Driver,* 411 F.2d 436, 445 (2d Cir. 1969); where it held that the "A.P.A. constitutes a waiver of sovereign immunity concerning those claims which come within its scope." *Accord, Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663 (2d Cir. 1973).

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute;

As the findings of the Acting Commissioner of Customs were based upon a hearing record,[10] the appropriate standard for reviewing those findings is the "substantial evidence test". *Camp v. Pitts,* 411 U.S. 138, 141, 93 S.Ct. 1241, 1243, 36 L.Ed.2d 106 (1973); *National Nutritional Foods Association v. Weinberger,* 512 F.2d 688, 700 (2d Cir. 1975). Thus, this Court must determine whether, considered as a whole, the record in this case contains substantial evidence to support the findings made below. *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). In *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 619–620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966), the Supreme Court set forth the definition of "substantial evidence":

We have defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. National Labor Relations Board,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126. "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Board v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (footnote omitted). This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *National Labor Relations Board v. Nevada Consolidated Copper Corp.,* 316 U.S. 105, 106, 62 S.Ct. 960, 961, 86 L.Ed. 1305; *Keele Hair & Scalp Specialists, Inc. v. FTC,* 5 Cir., 275 F.2d 18, 21.

In considering the penalty imposed upon Tempo by the Acting Commissioner of Customs, this Court is confined to a limited inquiry. The assessment of penalties by an administrative agency is not a factual finding but the exercise of a discretionary grant of power. A review of such penalties is limited to a determination of whether there has been an abuse of discretion. *Jacob Siegel Co. v. Federal Trade Commission,* 327 U.S. 608, 611–612, 66 S.Ct. 758, 760, 90 L.Ed. 888 (1946); *G. H. Miller & Company v. United States,* 260 F.2d 286, 296 (7th Cir. 1958), *cert. denied,* 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572; *Beall Construction Company v. Occupational Safety and Health Review Commission,* 507 F.2d 1041, 1046 (8th Cir. 1974); *cf. Nadiak v. C.A.B.,* 305 F.2d 588, 593 (5th Cir. 1962), *cert. denied,* 372 U.S. 913, 83 S.Ct. 729, 9 L.Ed.2d 722. In this regard when the penalty chosen by an agency is within the range of sanctions provided by applicable disciplinary regulations, the severity of the sanction imposed is within the discretion of the agency. *Ricci v. United States,* 507 F.2d 1390, 1393 (Ct.Cl.1974). Further, the imposition of a sanction within the authority of an administrative agency is not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases. *Butz v. Glover Livestock Commission Company, Inc.,* 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973), *rehearing denied,* 412 U.S. 933, 93 S.Ct. 2746, 37 L.Ed.2d 162.

After a thorough consideration of the entire record of the administrative hearing, it is the opinion of this Court that substantial evidence exists to support the findings made below. This Court also finds that the Acting Commissioner of Customs did not abuse his discretion in revoking Tempo's customhouse cartman's license.

10. The administrative hearing was held pursuant to 19 C.F.R. § 112.30(d)(2).

## MERITS

Ten independent grounds for the suspension or revocation of the license of a customhouse cartman or lighterman are set forth in 19 C.F.R. § 112.30(a). This section provides in part:

> (a) *Grounds for suspension or revocation of licenses.* The district director may revoke or suspend the license of a cartman or lighterman if:
>
> . . . . . .
>
> (5) The holder of such a license or an officer of a corporation holding such a license is convicted of a felony, or is convicted of a misdemeanor involving theft, smuggling, or a theft-connected crime; [or]
>
> . . . . . .
>
> (9) The holder is guilty of any negligence, dishonest or deceptive practices or carelessness in the conduct of his business;

In a letter of decision dated July 9, 1975, the Acting Commissioner of Customs made the following findings:

> That the conduct of the hearing and procedural steps preliminary and subsequent thereto comply with the pertinent statutes and regulations;
>
> That the provisions of sections 112.-30(a)(5) and (9) of the Customs Regulations authorize the revocation of the license of a customhouse cartman if an officer of a corporation holding a license is convicted of a misdemeanor involving theft, smuggling, or a theft-connected crime, or if the holder of such a license is guilty of any dishonest or deceptive practices in the conduct of his business;
>
> That Mr. Anthony Garite is the President of Tempo Trucking and Transfer Corporation;
>
> That Mr. Anthony Garite was convicted of a misdemeanor involving theft, smuggling, or a theft-connected crime in the U. S. District Court for the Eastern District of New York on May 4, 1973;
>
> That the evidence establishes that Mr. Garite was guilty of a deceptive practice on February 28, 1972, when he affixed Customs warning labels to a carton of merchandise without authorization; and
>
> That the charges were proved by a preponderance of the evidence.
>
> (Complaint, Ex. "A").

### I.

In order to prove that an officer of Tempo was convicted of a misdemeanor involving theft or a theft-connected crime, the government introduced the following documents into evidence at the administrative hearing: a certified copy of a judgment of conviction of Tempo's then president Anthony Garite (Govt. Ex. 4); a transcript of the proceedings at Garite's sentencing on May 4, 1973 (Govt. Ex. 4–A); a transcript of the proceedings at the time Garite entered a guilty plea on February 26, 1973 (Govt. Ex. 4–B); and letters indicating that Garite was in fact the president of Tempo at the time of his conviction (Govt. Exs. 5, 6–A, 6–B). It is beyond dispute that the record contains substantial evidence to support the finding that Anthony Garite was convicted of violating 18 U.S.C. § 659 (a statute involving embezzlement and theft), and that Garite was president of Tempo at the time of his conviction. Tempo now argues that since Garite's conviction was based upon an "Alford" type plea, the Hearing Officer abused his discretion by failing to explore the facts and circumstances underlying the conviction.[11]

---

11. On February 26, 1973, Anthony Garite entered a plea of guilty to a violation of 18 U.S.C. § 659 before the Honorable Orrin G. Judd in the United States District Court for the Eastern District of New York. Throughout these proceedings Garite's attorney referred to Garite's plea as a "Serrano" plea (Govt. Ex. 4–B, p. 4). *See People v. Serrano*, 15 N.Y.2d 304, 258 N.Y.S.2d 386, 206 N.E.2d 330 (1965). As Garite's guilty plea did not include an express admission that he committed the particular acts

**516**

Plaintiff notes that 19 C.F.R. § 112.-30(a) is not mandatory, i. e. the district director of customs is not required to suspend or revoke a license when one or more of the ten predicate grounds is factually established. Plaintiff argues that given the non-mandatory nature of 19 C.F.R. § 112.30(a), the mere finding of Garite's conviction was not a sufficient ground for revoking plaintiff's license since Garite never did expressly admit that he committed the particular acts claimed to underlie the conviction. Despite the clear language of this regulation, plaintiff contends that because Garite's conviction was based upon an Alford plea, the Hearing Officer had a duty to explore the facts underlying Garite's conviction. Plaintiff's novel argument concerns the consequences of an Alford plea outside the particular case in which it is interposed. Although there is scant authority regarding this question, there is considerable authority with respect to the consequences of a plea of *nolo contendere*. It is therefore useful to proceed by analogy.

 In *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court held that a plea of guilty accompanied by protestations of innocence is constitutionally acceptable and is not so indicative of coercion and involuntariness as to invalidate the plea.[12] In support of its conclusion the Court stated: "[o]rdinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant's admission that he committed the crime

charged against him and his consent that judgment be entered without a trial of any kind. The plea usually subsumes both elements, and justifiably so, even though there is no express admission by the defendant that he committed the particular acts claimed to constitute the crimes charged in the indictment" (Citations omitted). 400 U.S. at 32, 91 S.Ct. at 164. Thus the Court reasoned: that the express admission of guilt by a defendant is not a constitutional requisite to the imposition of a criminal penalty; and that a defendant may voluntarily, knowingly, and understandingly consent to the imposition of such a penalty even if he is unwilling or unable to admit his participation in the acts constituting the crime. 400 U.S. at 37, 91 S.Ct. at 167. It is clear that *Alford* permits a court to accept a plea of guilty even when the defendant asserts his innocence and does not admit that he committed the particular acts claimed to constitute the crimes charged in the indictment. However, it is important to note that *Alford* did not eliminate the mandate of former Rule 11 of the Federal Rules of Criminal Procedure (1966), that a court " 'shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea' ".[13] 400 U.S. at 38 n. 10, 91 S.Ct. at 168; *United States ex rel. Dunn v. Casscles*, 494 F.2d 397 (2d Cir. 1974).

 The plea of *nolo contendere* has been defined in a wide variety of ways.[14] The general rule is that a plea of *nolo contendere* constitutes an implied

---

claimed to constitute the crime charged (although it was not accompanied by a protestation of innocence), it was obviously entered pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

12. *See generally* Note, 39 Fordham L.Rev. 773 (1971); Note, 49 N.Carolina L.Rev. 795 (1971).

13. New Rule 11(f), effective December 1, 1975, retains the mandate of former Rule 11, providing: "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without

making such inquiry as shall satisfy it that there is a factual basis for the plea." The Advisory Committee notes that the new rule "does not speak directly to the issue of whether a judge may accept a plea of guilty where there is a factual basis for the plea but the defendant asserts his innocence." Fed.R.Crim.P. 11(f), *Notes of Advisory Committee on Rules*, 18 U.S.C.A.

14. *See generally* Annot., 89 A.L.R.2d 540 (1963); 1 Wright and Miller, Federal Practice and Procedure: Criminal § 177. For a general discussion of the history of the *nolo* plea see *North Carolina v. Alford, supra*, 400 U.S. at 35–36, n. 8, 91 S.Ct. at 166–167.

confession of guilt and has the same effect as a plea of guilty as far as the proceedings on an indictment are concerned. Thus, a defendant who has been sentenced on such a plea is deemed convicted of the offense for which he was indicted. *Hudson v. United States*, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347 (1925); *Tseung Chu v. Cornell*, 247 F. 2d 929 (9th Cir. 1957); *cert. denied*, 355 U.S. 892, 78 S.Ct. 265, 2 L.Ed.2d 190. The principal difference between a plea of guilty and a *nolo* plea is that the latter may not be used against a defendant in a civil action based upon the same acts. As the *nolo* plea is not an express admission of guilt it can not be received as such in a subsequent proceeding against the defendant. 1 Wright and Miller, Federal Practice and Procedure: Criminal § 177; Annot., 89 A.L.R.2d 540, § 37. Former Rule 11 of the Federal Rules of Criminal Procedure (1966) permits a defendant to plead *nolo contendere* with the consent of the court.[15] However, under both former Rule 11 and new Rule 11(b), a court may accept a plea of *nolo contendere* without being satisfied that there is a factual basis for the plea.[16]

 Numerous courts have drawn a distinction between a defendant's guilt and his conviction in regard to the effect of a *nolo* plea outside the case in which it is interposed. Thus, a defendant's conviction upon a plea of *nolo contendere* is not an express admission of guilt, therefore the defendant is not estopped in a subsequent civil proceeding from denying the facts that were the basis of his plea. However, the fact of his conviction upon the *nolo* plea may be shown in a subsequent civil proceeding, and such a conviction subjects the defendant to the same consequences as if it were entered after a plea of guilty or not guilty. *See Tseung Chu v. Cornell, supra*; Annot., 89 A.L. R.2d 540 § 42. In *United States v. Bagliore*, 182 F.Supp. 714, 716 (E.D.N. Y.1960), the Court noted this distinction stating "[t]hough [a plea of *nolo contendere*] . . . does not constitute an admission of guilt in subsequent actions, it is of no help to a defendant if the conviction (regardless of how obtained), rather than admission of guilt, is the basis for the subsequent action."

This distinction is especially important where a statute provides that the "conviction" of a person of certain crimes is a ground for the revocation of a license. *See* Annot., 89 A.L.R.2d 540 § 45. A majority of cases support the view that where a statute provides as such, the judgment constitutes a "conviction" despite the fact that it is entered upon a *nolo* plea.[17] In general these cases do not afford a defendant the right to establish his innocence at a revocation proceeding merely because his conviction was based upon a *nolo* plea. Moreover, the cases in support of this position do not provide that when a license revocation hearing is held, the hearing officer has a duty to explore behind the conviction to determine if the defendant was in fact guilty of the crime for which he entered a *nolo* plea.[18]

15. New Rule 11(b), effective December 1, 1975, retains the requirement that the defendant obtain the consent of the court in order to plead *nolo contendere*. *See* Fed.R. Crim.P. 11(b), *Notes of Advisory Committee on Rules*, 18 U.S.C.A.

16. *North Carolina v. Alford*, supra, 400 U.S. at 35–36 n. 8, 91 S.Ct. at 166–167; 1 Wright and Miller, Federal Practice and Procedure: Criminal §§ 174, 177; Fed.R. Crim.P. 11(b), *Notes of Advisory Committee on Rules*, 18 U.S.C.A.

17. *See e. g., In Re Eaton*, 14 Ill.2d 338, 152 N.E.2d 850 (1958); *Lee v. Wisconsin State Board of Dental Examiners*, 29 Wis.2d 330, 139 N.W.2d 61 (1966); *Christensen v. Orr*, 275 Cal.App.2d 12, 79 Cal.Rptr. 656 (4th Dist. 1969); *In Re Snook*, 94 Idaho 904, 499 P.2d 1260 (1972); *In Re Lewis*, 389 Mich. 668, 209 N.W.2d 203 (1973).

18. *See e. g., Kravis v. Hock*, 136 N.J.L. 161, 54 A.2d 778 (N.J.Ct.Err. & App.1947); *Fox v. Scheidt*, 241 N.C. 31, 84 S.E.2d 259 (1954); *In Re Teitelbaum*, 13 Ill.2d 586, 150 N.E.2d 873 (1958); *State v. Tibbels*, 167 Neb. 247, 92 N.W.2d 546 (1958).

518

The applicable customs regulation, 19 C.F.R. § 112.30(a)(5), provides that the conviction of a corporate officer, not proof of facts underlying the conviction, is a ground for the suspension or revocation of a license. This Court is in agreement with those cases which hold that a judgment entered upon a *nolo* plea constitutes a "conviction" under a statute similar to the aforementioned customs regulations. Following this line of authority, it is the opinion of this Court that if Garite's conviction were based upon a plea of *nolo contendere*, the Hearing Officer would not have had a duty to explore the facts underlying the conviction, despite the fact that no factual basis for the *nolo* plea would have been established. As Garite's conviction was based upon an Alford plea which was supported by the finding of a factual basis, it would seem to follow *a fortiori* that the hearing officer did not have a duty to explore the facts behind Garite's conviction. Consequently, this Court concludes that there was no abuse of discretion on the part of the Hearing Officer.

II.

Plaintiff further argues that there was insufficient evidence that it was guilty of any deceptive practices to sustain a revocation of its license. It is provided in 19 C.F.R. § 18.4(a)(1) that conveyances in which bonded merchandise is transported shall be sealed with red in-bond customs seals under customs supervision.[19] The record demonstrates through legally competent evidence that when the carton was first picked up from customs supervision at Air Canada by Tempo employee Thomas Rupa, the carton was in good condition, had only one type of tape on it, and had no red customs seals (Tr. 71, 74, 99, 107–109).

19. See 19 C.F.R. §§ 18.4(e) & (f), 24.13(b) & (f).
20. In this regard it is noteworthy that the finality accorded to administrative findings extends as well to inferences from the evidence having a substantial basis in the record. *Feil v. Gardner*, 281 F.Supp. 983, 986

At the time that Tempo employee Frank Elia engaged in Tempo's first attempt to deliver the carton to Pan American, the carton was damaged, appeared to contain a cinderblock, and still did not have any customs seals (Tr. 122, 123, 129, 135). When Tempo engaged in its second attempt to deliver the carton to Pan American, the carton was heavily taped and had customs seals (Tr. 143, 145). On February 29, 1972, a Tempo employee brought the carton back to Air Canada and requested that a customs inspector cord and seal the carton. At that time the carton was covered with customs seals and had been retaped over the original taping (Tr. 76, 77).

In addition, the record contains the testimony of two special agents of the Bureau of Customs regarding an admission by Anthony Garite at an interview on February 29, 1972. At that time Garite stated that he first learned that jewelry was missing from the carton when Frank Elia returned the carton to the Tempo warehouse from Pan American. Garite stated that he feared that Tempo's license would be in jeopardy if Customs learned that the jewelry disappeared from the carton while it was in the possession of Tempo. He therefore retaped the carton and placed customs seals on it. He also directed two Tempo employees to attempt to redeliver the carton to Pan American (Tr. 163, 167–170, 205–206).

Indeed, upon reading the record as a whole, substantial evidence exists upon which a reasonable mind could properly arrive at the conclusion reached by the Acting Commissioner of Customs. Certainly, the specific intent necessary for the finding of a deceptive practice has a substantial basis in the admission of Garite and the inferences drawn from the direct testimony.[20]

(E.D.Wis.1968), *aff'd.* 402 F.2d 481 (7th Cir. 1968). Moreover, a reviewing court may not substitute its judgment for that of an administrative agency in reviewing inferences drawn from established facts. *See* discussion in 4 Davis, Administrative Law Treatise, § 29.05.

When viewed in the light furnished by the record in its entirety, the Court finds substantial evidence supporting the conclusion that Anthony Garite was guilty of a deceptive practice on February 28, 1972, when he affixed customs labels to a carton of merchandise without authorization.

Plaintiff argues that the affixing of customs seals without customs supervision is at best a "technical" violation of the customs regulations and is not a sufficient basis for the revocation of its license. Plaintiff notes that the testimony at the revocation hearing indicated substantial confusion regarding the purpose of customs seals.

■■■■■■ Plaintiff's assertions are unpersuasive. Administrative rules and regulations, if not in conflict with express statutory provisions, "have 'the force and effect of law' ", *General Services Administration v. Benson*, 415 F.2d 878, 880 (9th Cir. 1969); *Whattoff v. United States*, 355 F.2d 473, 478 (8th Cir. 1966), and "their appearance in the Federal Register is tantamount to legal notice of their contents". *United States v. Millsap*, 208 F.Supp. 511, 516 (D. Wyo.1962); *Doran v. United States*, 304 F.Supp. 1162, 1169 (D.Puerto Rico 1969). Thus, Tempo had constructive notice that it was only to use customs labels with customs supervision under 19 C.F.R. § 18.4(a)(1). Indeed, there was testimony that it is customary for truckers to place these labels on conveyances without customs supervision (Tr. 100–

104, 109, 127, 146, 174). However, the testimony at the hearing regarding the use and purpose of customs labels is not material to the legal import of the aforementioned regulation. Moreover, it must be noted that Tempo's violation of this regulation was found to be part of a deceptive scheme. As such it can not be considered a mere "technical" violation of customs regulations.

III.

■■■■■ At the outset of the administrative hearing on January 23, 1975, plaintiff's counsel requested an adjournment which was denied by the Hearing Officer (Tr. 35). Plaintiff contends that under the circumstances, the refusal to adjourn the hearing was an abuse of discretion.

On the morning of January 23, 1975, prior to the commencement of the hearing, Anthony Garite was served with an Order to Show Cause returnable February 7, 1975. This Show Cause Order sought that the judgment and order of probation of Garite entered May 4, 1973 (*U. S. A. v. Anthony Garite*, 73 CR 202), be "corrected" to include the Tempo Trucking and Transfer Corporation and to require that Garite surrender Tempo's license to the Bureau of Customs (Pl.Ex. "A").[21] At the commencement of the administrative hearing defendant's counsel asserted that the Show Cause Order could bring about the revocation of Garite's probation. Defense counsel therefore requested an adjourn-

---

[21] In his affidavit in support of the "motion for show cause order", Fred F. Barlow, special Attorney of the Department of Justice, noted that one of the conditions inducing the Government to dismiss the indictments in 72 CR 886 and 72 CR 1196 upon Garite's sentence in 73 CR 202 was a promise made by Garite's attorney, Marvin H. Wolf, Esq. At the sentencing proceedings before the Honorable Orrin G. Judd on May 4, 1973, Mr. Wolf promised on behalf of the defendant Garite to voluntarily surrender Tempo's license.

In a Memorandum and Order filed February 28, 1975 (*U. S. A. v. Anthony Garite*, 73 CR 202), Judge Judd ordered: "That the judgment and order of probation entered May 4, 1973 be corrected to add as a special condition that defendant cause the Custom House License of Tempo Trucking and Transfer Corporation to be surrendered to the Bureau of Customs," and . . . "that defendant Anthony Garite appear before the court at 2:00 P.M. on March 6, 1975 for a hearing on whether he has violated such condition of probation and whether sentence should not now be imposed." On March 6, 1975 Judge Judd marked the case off the calendar without prejudice to the Government. On July 8, 1975 an order was filed discharging Garite from probation.

ment of the administrative hearing and argued that if one were not granted he might have to advise Garite to invoke the Fifth Amendment (Tr. 24). The Hearing Officer denied the application stating that he did not believe that Garite could incriminate himself at Tempo's license revocation hearing (Tr. 35). Tempo did not present a defense at the administrative hearing although Tempo's attorney did cross-examine all of the government witnesses. Tempo now argues that the refusal to grant an adjournment was the proximate cause for Tempo's failure to set forth any evidentiary showing.

It should be noted that the government never called Garite to take the stand so that he never invoked the privilege against self-incrimination on the record. *See* 8 Wigmore, Evidence § 2268 (McNaughton rev. 1961). Thus, the issue presented is whether the Hearing Officer, knowing that Garite's counsel might advise him not to testify at the license revocation hearing, abused his discretion by denying Tempo's request for an adjournment.

The Hearing Officer correctly concluded that Garite could not "incriminate" himself at the license revocation hearing. Garite could not interpose the privilege against self-incrimination as the subject of the administrative hearing was the factual circumstances underlying his plea of guilty and conviction. "It is well established that once a witness has been convicted for the transactions in question, he is no longer able to claim the privilege of the Fifth Amendment and may be compelled to testify." *United States v. Romero,* 249 F.2d 371, 375 (2d Cir. 1957). *See United States v. Gernie,* 252 F.2d 664, 670 (2d Cir. 1958), *cert. denied,* 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073 *rehearing denied,*

357 U.S. 944, 78 S.Ct. 1383, 2 L.Ed.2d 1558. Garite's plea of guilty divested him of his Fifth Amendment right to refuse to testify regarding the transactions and events underlying his convictions.[22] *United States v. Hoffman,* 385 F.2d 501, 504 (7th Cir. 1967), *cert. denied* 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288; *United States v. Karger,* 439 F.2d 1108, 1109 (1st Cir. 1971), *cert. denied,* 403 U.S. 919, 91 S.Ct. 2230, 29 L.Ed.2d 696. *See generally,* 8 Wigmore, Evidence, § 2279 (McNaughton rev. 1961); McCormick, Evidence, § 121 (2d Ed. 1972); Annot., 9 A.L.R.3d 990 (1966); 21 Am.Jur.2d, Criminal Law § 359. Thus, the privilege against self-incrimination did not provide a justification for Garite's failure to testify at the license revocation hearing. After having carefully considered the record it is the opinion of this Court that neither Garite nor Tempo were deprived of any fundamental rights at the administrative hearing. Tempo's failure to set forth any evidentiary showing was the product of its own independent choice. Further, the Hearing Officer was bound to follow the mandate of 19 C.F.R. § 112.30(d)(1) which provides that if a hearing is held it must take place within 30 days following application therefor. As Tempo requested a hearing by letter dated December 30, 1974 (Govt. Ex. 2), the Hearing Officer could not have adjourned the hearing to a date after the return date of the Show Cause Order. Under the circumstances presented it was not an abuse of discretion for the Hearing Officer to deny the request for an adjournment.

### IV.

Accordingly, defendant's motion for judgment on the pleadings is granted.

---

**22.** Moreover, it has been held that the danger of a revocation of probation does not constitute "incrimination" within the meaning of the Fifth Amendment. *See Holdren v. People,* 168 Colo. 474, 452 P.2d 28 (1969).