HOLT HAULING AND WAREHOUSING SYSTEM, INC., Plaintiff,

v.

UNITED STATES CUSTOMS SERVICE, William J. Griffin, Regional Commissioner of Customs For the Northeast Region, Anthony L. Piazza, District Director of Customs For the Philadelphia District, and William Duncan, Hearing Officer, Defendants.

Court No. 86–8–01048.

United States Court of International Trade.

Dec. 10, 1986.

---

Donohue and Donohue, Joseph F. Donohue and Joseph F. Donohue, Jr., New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, Civil Div., Dept. of Justice, New York City, Barbara M. Epstein, Washington, D.C., for defendants.

## OPINION

TSOUCALAS, Judge:

Plaintiff filed this action to contest the final determination by the Regional Commissioner of Customs for the Northeast Region, on August 15, 1986, to suspend

plaintiff's bonded warehouse status for one year, pursuant to 19 C.F.R. 19.3(f). The notice of suspension states plaintiff released certain bonded merchandise to its customers prior to payment of duty and prior to plaintiff obtaining the required written documents indicating Customs had authorized release; and, in addition, certain bonded and nonbonded merchandise were intermingled, preventing reconciliation of inventory with warehouse entry permit folders. The Regional Commissioner determined these actions involved substantial volumes of merchandise which covered numerous transactions over an extended period of time. Pursuant to plaintiff's motion for a preliminary injunction, on September 4, 1986, this Court stayed enforcement of the suspension until a decision on the merits of the action was rendered.[1] The action is now before this Court on defendant's motion for summary judgment on the administrative record, pursuant to USCIT R. 56. Plaintiff has also moved for judgment on the record, to set aside the Regional Commissioner's decision. On November 25, 1986, oral arguments were heard by this Court.

Plaintiff challenges the Regional Commissioner's decision to suspend its bonded warehouse status as: (1) procedurally defective in failing to comply with the Administrative Procedure Act (APA), 5 U.S.C. § 558(c); (2) unsupported by substantial evidence; and, (3) as arbitrary, capricious, an abuse of discretion and not in accordance with law. 5 U.S.C. § 706.

The defendant claims that the Commissioner's decision is supported by substantial evidence on the record; that plaintiff was not entitled to notice since its conduct was willful; and, alternatively, plaintiff was provided sufficient notice pursuant to § 558(c) of the A.P.A. and no material prejudice resulted from the agency's action.

## BACKGROUND

In December 1982, Customs amended its procedures in reference to bonded warehouses transferring the responsibility of maintaining documentation as to in-bond movement to the warehouse proprietor, thus eliminating the necessity of posting a Customs officer at each warehouse. *See* T.D. 82–204, 16 Cust.Bull. 520 (1982). The record indicates that in November 1982, Customs Officer Corrigan instructed Holt personnel as to the new procedures with the aid of a procedural manual. While the length and depth of this instructional meeting are disputed, Holt personnel were nonetheless furnished with the guidelines as to recordkeeping and as to the requirements for withdrawal of merchandise.

Between August 8 and 15, 1985, Customs conducted an audit of Holt's premises. The auditors determined that nine entries of plywood and russwood with a total value of $1,156,267 were released prior to duty in the amount of $115,627 being paid. They further discovered that four million gallons of frozen juice relating to ten separate warehouse entries had been released by plaintiff without proper documentation and that bonded and non-bonded frozen juice were intermingled in the refrigerated section preventing a proper inventory control. Plaintiff was not informed that this audit was forthcoming despite specific language in the procedural handbook requiring the contrary.

On August 16, 1985, the District Director, without written notice to Holt, decided that the warehouse should be closed based on the auditor's findings, and ordered that the entry and withdrawal of merchandise from the warehouse be monitored by Customs officers. On August 16, 1985, an executive officer of Holt was apprised of the violations, when the District Director delivered to Holt's vice president an agreement with five conditions. R.Doc. 10–1. The agreement states "Holt's Hauling & Warehouse System, Inc. requesting the reopening of their bonded warehouse in Gloucester City, New Jersey hereby agrees to the following conditions...." Briefly summarized, the five conditions were:

---

1. As a condition of this Court's order, plaintiff filed a judicial bond in the amount of $800,000, and a copy of its current warehouse bond in the amount of $200,000, with the court.

1. providing personnel to assist Customs in conducting an inventory of plaintiff's merchandise;

2. rearranging cargo to segregate bonded merchandise;

3. installation of a failsafe procedure for entry and withdrawal of merchandise;

4. to not release bonded cargo without payment of duty or proof of duty paid; and

5. delivery of $1,000,000 unconditional letter of credit to the District Director.

When the President of Holt met with the District Director to discuss the proposal, Mr. Holt informed him that it was financially not feasible to post this letter of credit and it appeared that no other offers for security made by Mr. Holt (in the form of increased bonds, corporate or personal guarantees) were acceptable. Nonetheless, the warehouse was temporarily reopened.

On August 28, 1985, the District Director provided plaintiff formal notice to show cause why its bonded warehouse status should not be revoked or suspended. This notice was further detailed on September 10, 1985, in response to plaintiff's request for additional information.[2] Following plaintiff's response to these charges, a hearing was held on January 22–23, 1986. Based on the decision of the hearing examiner recommending suspension, the Regional Commissioner issued his decision to suspend plaintiff's bonded warehouse status

for one year. That decision is the subject of this action.

■ Plaintiff's primary contention, which it has pursued since the inception of these proceedings, is that Customs did not comply with § 558(c). It is apparent that suspension of plaintiff's license is governed by the procedural requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 558(c), which provides in pertinent part:

... Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—

(1) notice by the agency in writing of the facts or conduct which may warrant the action; and

(2) opportunity to demonstrate or achieve compliance with all lawful requirements.

Congress recognized that licensees "are subjected to irreparable injuries unless safeguards are provided. The purpose of this section is to remove the threat of disastrous, arbitrary, and irremediable administrative action." *Administrative Procedure Act: Legislative History*, S.Doc. No. 248, 79th Cong., 2d Sess. 368 (1946).[3] The legislative history further indicates that this "section is designed to preclude the withdrawal of licenses, except in cases of willfulness or the stated cases of urgency, without affording the licensee an opportunity for the correction of conduct ques-

---

**2.** In essence the notice set forth these contentions:

Holt Hauling refused or neglected to obey any proper order of a Customs officer or any Customs rule or regulation relative to the operation or administration of a bonded warehouse in violation of 19 C.F.R. 19.3(e)(2).

(a) Holt, on or prior to September 28, 1984, released and delivered 1,954 crates of plywood and nine crates of russwood with duty of $115,-644 owed without withdrawal from warehouse entry.

(b) During 1984 and 1985, ten entries of orange and pineapple juice were delivered to customers prior to payment of duty of $567,882.00 and prior to Customs releasing the merchandise.

(c) During August 9—August 15, 1985, the period of a Customs audit, orange and pineapple juice was stored in a manner to prevent reconciliation of bonded warehouse merchandise with warehouse entry permit folders.

In the September 10th letter, it is alleged that one or more Customs officers warned plaintiff of violations of the regulations and despite numerous orders to correct delivery of cargo without proper documentation and payment of duty, plaintiff failed to comply.

**3.** This refers to § 9(b) of the A.P.A. of 1946, the predecessor section to § 558(c), almost identical in language, as to the pertinent parts.

tioned by the agency." S.Doc. No. 248, *supra* at 35. The demonstrable facts must fully and fairly warrant application of the exceptions. "Willfulness must be manifest." *Administrative Procedure Act,* S.Rep. No. 752, 79th Cong., 1st Sess. 25–26 (1945) *reprinted in Administrative Procedure Act: Legislative History,* S.Doc. No. 248, *supra,* at 211–212.

The procedures in § 558(c) have been interpreted to afford a licensee a "second chance" to conform with regulatory mandates before more formal agency action, in the nature of suspension or revocation, is undertaken. *Gallagher & Ascher Co. v. Simon,* 687 F.2d 1067, 1074 (7th Cir.1982). *Blackwell College of Business v. Attorney General,* 454 F.2d 928, 933–934 (D.C.Cir. 1971). Absent a finding of willfulness, the licensee is entitled to written notice of the facts warranting suspension as well as an opportunity to remedy those transgressions before actual suspension. *Gallagher & Ascher Co. v. Simon,* 687 F.2d at 1074; *American Fruit Purveyors, Inc. v. United States,* 630 F.2d 370, 374 (5th Cir.1980), *cert. denied,* 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 197 (1981).

Willfulness has been defined as the (1) intentional performance of an act which is prohibited, irrespective of evil motive or reliance on erroneous advice, or (2) action which carelessly disregards statutory requirements. *Goodman v. Benson,* 286 F.2d 896, 900 (7th Cir.1961); *Koden v. United States,* 564 F.2d 228, 234 (7th Cir. 1977). The agency's burden was to show petitioner's "actions were intentional as opposed to accidental." *Lawrence v. Commodity Futures Trading Commission,* 759 F.2d 767, 773 (9th Cir.1985).

Defendant argues that the Commissioner impliedly found willful conduct on plaintiff's part since the Commissioner expressly stated that his decision was based on the recommendation of the hearing officer, who concluded:

> Since the wrongful release occurred systematically over an extended period of time involving a large volume of merchandise and substantial duty loss, it is

concluded it was reasonable to act on the basis that "willfulness" was involved. R.Doc. 2 at 12. In the cases applying the willfulness exception in § 558(c), the licensees either received prior warning letters, *Goodman v. Benson,* 286 F.2d 896; *Lawrence v. Commodity Futures Trading Commission,* 759 F.2d 767, or were subject to a previous court order, *American Fruit Purveyors, Inc. v. United States,* 630 F.2d 370; *Lawrence v. Commodity Futures Trading Commission, supra,* informing them that their conduct was not satisfying agency regulations. In each instance the licensee again disregarded the warnings or orders by engaging in similar conduct.

While no warning letters were sent, nor was plaintiff subject to any previous court order, Customs officers testified that they noted missing documents in plaintiff's files long before the audit of August 1985, and apparently orally warned plaintiff's personnel. These employees were in possession of the handbook which outlined the procedures to follow for the entry and withdrawal of merchandise. Even though these witnesses testified that they did not completely understand the manual there was no effort made on their part to seek clarification or assistance from the Customs officers with whom they dealt. The violations were not isolated instances, but occurred well over a thirteen-month period. Plaintiff claims there was no express finding of willfulness and that the evidence does not support such a finding. However, even if the possibility exists of drawing two inconsistent conclusions from the evidence, that does not prevent a finding that the agency's action was supported by substantial evidence. *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 619–620, 86 S.Ct. 1018, 1026–1027, 16 L.Ed.2d 131 (1966). In light of the aforementioned facts, there was a reasonable basis to support the conclusion that plaintiff's conduct was willful. As the Supreme Court stated, "While we may not supply a reasoned basis for the agency's action that the agency itself has not given, ... we will uphold a decision of less than ideal clarity if the

agency's path may reasonably be discerned." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). The Regional Commissioner's determination, while succint, nonetheless stated it was based on the hearing examiner's recommendation, which was a 17–page analysis of the testimony and exhibits. In these circumstances, the agency's reasoning process may be discerned.

■ Nonetheless, plaintiff was afforded the procedural safeguards provided in § 558(c). This section states that license suspension is lawful only if *before institution* (emphasis added) of these proceedings, plaintiff was given written notice and an opportunity to comply. While the District Director's letter of August 28, 1985, instituted these proceedings,[4] and cannot satisfy the requirement of § 558(c), plaintiff did receive formal written notice prior to that time. This was provided by the proposed agreement presented by the District Director to Ms. Robbins, Vice President, on August 16, 1985. At the time Ms. Robbins was confronted with this proposal, also present were the auditors who had discovered the irregularities during their inspection at Holt. While it appears that the District Director was less than amenable to discussion about these violations, R.Doc. 7 at 97, 98, the auditors did give Ms. Robbins a general overview of the discrepancies they encountered, R.Doc. 7 at 99. Although the tenor of the hearing transcript indicates that the District Director had already predetermined that Holt's facility should be closed unless a letter of credit in the amount of $1,000,000 was posted, this meeting nonetheless put a corporate officer at Holt on notice as to the areas in operation of their warehouse which needed substantial improvement. This written proposal, in addition to the explanation by the auditors, albeit cursory,

satisfied the written notice requirements of § 558(c).

Furthermore, while there is no prescribed time period in the statute in which the opportunity to comply must be afforded, it is enough if the "opportunity be 'accorded,' on some fair and reasonable basis." *Shuck v. SEC,* 264 F.2d 358, 360 (D.C.Cir.1958). In *Gallagher v. Ascher, supra,* two licensees (customs brokers) received warning letters, on March 15, 1976 and July 22, 1976, and July 23, 1976, respectively; the actual suspension letters were not issued until September 13, 1976. The court held that "[t]hese warning letters provided more than sufficient notice of the facts warranting the suspensions and allowed the brokers more than adequate time to put their houses in order and thereby avoid the subsequent suspensions." 687 F.2d at 1076.

While it appears that there was only a twelve day "second chance" period (from the August 16, 1985, notice until the institution of the agency action on August 28, 1985), this Court is guided by those cases holding that procedural errors must be prejudicial to the adverse party in order to set aside the action. *American Motorists Insurance Company v. United States,* 5 CIT 33, 43 (1983); *Woodrum v. Donovan,* 4 CIT 46, 52, 544 F.Supp. 202, 207 (1982); *See also* 5 U.S.C. § 706. Practically viewing the record, it cannot be said that prejudice resulted to the plaintiff. Plaintiff submitted a response to the District Director's charges; it had the opportunity to bring forth evidence at the hearing to militate against a recommendation of suspension, and even before the actual notice of suspension, plaintiff submitted further arguments to the Regional Commissioner. It is apparent that plaintiff was afforded the opportunity to demonstrate compliance and present any mitigating evidence well in ad-

---

**4.** Section 19.3(e) states that the procedures which shall be followed for license suspension are set forth in § 19.3(f). The first sentence of that regulation provides:

The district director may at any time serve notice in writing upon any proprietor of a bonded warehouse to show cause why his right to continue the bonded status of his warehouse should not be revoked or suspended for cause.

vance of the final decision by the Regional Commissioner.

Turning to the substantive issue before the Court, the question is whether, considering the entire record, the Regional Commissioner's findings are supported by substantial evidence. *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951). *Baltimore Security Warehouse Co. v. United States,* 9 CIT ——, Slip Op. 85–131 at 7 (Dec. 13, 1985); 28 U.S.C. § 2640(d); 5 U.S.C. § 706. This standard requires the Court to uphold the agency action as long as there is such evidence in the record as a reasonable mind would accept to support the conclusion reached. *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

The Regional Commissioner's action to suspend plaintiff's bonded warehouse status was taken pursuant to 19 C.F.R. 19.3(e), which provides that the bonded warehouse proprietor's right to operate may be suspended for cause if:

(2) The warehouse proprietor refuses or neglects to obey any proper order of a Customs officer or any Customs order, rule, or regulation relative to the operation or administration of a bonded warehouse; [5]

It is alleged that plaintiff's practices were in violation of 19 C.F.R. § 19.6(b)(1) and § 144.39. These sections allow for the withdrawal of bonded merchandise from the warehouse through the use of a withdrawal permit approved by Customs, indicating its authorization to release the merchandise. The warehouse proprietor must maintain these documents and will be relieved of responsibility only for the merchandise shown on the application for withdrawal. Plaintiff was also found to have failed to maintain permit file folders in violation of 19 C.F.R. § 19.12(a)(2).

▮ The first charge alleged against plaintiff in violation of the above regulations includes the premature release of 2388 crates of plywood [6] and nine crates of russwood before obtaining warehouse withdrawals which document that duty has been paid (the amount of duty was $92,000).[7] Plaintiff does not dispute this allegation. However, plaintiff does contest the Regional Commissioner's conclusion that this violation resulted from a faulty system design and lack of an adequate control system.

The evidence indicates that when customers requested release of merchandise, plaintiff's personnel checked the customer inventory control cards. These were prepared from information generated from their computer. In two situations, the source of the input data, the delivery orders from the customs brokers, omitted the in-bond notation. In the other seven situations, the computer operator failed to enter the bonded status into the computer. These omissions carried forward to the control cards, and thus, plaintiff claims its personnel did not know that the merchandise in question was in-bond. There was evidence introduced that when bonded information was entered into the computer, early withdrawals did not occur. Nevertheless, the auditors' report indicates that these wrongful releases occurred from August 12, 1983 until October 9, 1984, which is a significant period of time. It was not until the audit in August 1985, that these discrepancies were discovered. Plaintiff clearly did not have an adequate control system over the release of bonded mer-

---

5. Authority for the Secretary of the Treasury to promulgate regulations for the establishment and operations of bonded warehouses to protect the Government's interest in the withdrawal and accounting of merchandise is found in 19 U.S.C. § 1556.

6. Originally, the District Director stated that this amount was 1954 crates. At the hearing, it was revealed that a "clerical error in computation"

occurred in the auditors preliminary analysis, but their final report indicates the correct amount.

7. The District Director originally stated that the duty owing was $115,644. However, the Regional Commissioner reduced this amount in his final decision based on plaintiff's contention that the duty rate was incorrect.

chandise since during a two year time period this problem was never internally detected, even though annual inventories were required. While there was evidence as to the remedial steps taken by plaintiff to check the warehouse receipts against the delivery orders, the hearing officer found that plaintiff's personnel were still unaware of the necessity to check plaintiff's warehouse receipts against Customs' warehouse entry and withdrawal documents.

■ In reviewing the second charge against plaintiff, the evidence bears out that about 10 entries of 4 million gallons of orange and pineapple juice were released to plaintiff's customers prior to presentation of the warehouse withdrawal permit indicating Custom's approval. Plaintiff offers as an explanation that its personnel verbally check with the customs broker to see whether and when duty will be paid on goods requested by the customer to be released. This employee then tries to "time" the release of merchandise to the point when she estimates Customs will authorize withdrawal of the merchandise. However, the record indicates that release was effectuated on 10 entries from one to 46 days before duty was actually paid. This employee testified that in her experience if the broker said he had the duty, it was always paid.

While plaintiff does not directly deny this practice, it argues that none of the Customs regulations cited require that the proprietor actually have the withdrawal documents in its possession before goods are released. The Court is not persuaded by this argument. 19 C.F.R. § 19.6(b)(1) allows for the withdrawal of merchandise by use of a permit for withdrawal (§ 144.39). It goes on to state that the warehouse proprietor will be relieved of responsibility only for the merchandise shown on the application for withdrawal. Section 144.39 states that the approved permit shall be presented to the warehouse proprietor as evidence of Customs authorization for withdrawal. The procedural manual provides that the duty paid withdrawal forms can be taken to the warehouse to effect release

and the proprietor *must* take whatever steps are necessary to insure the proper amount of packages are released. Plaintiff's interpretation of the regulations would render meaningless the terms "relieved of responsibility" in § 19.6, and in § 144.39, that the permit *shall* be presented to warehouse proprietor as evidence of Custom's authorization. The violation occurs because Customs is not yet in possession of the duties whereas the customer is in possession of the merchandise. While Holt personnel attempted to service its customers by prompt release of merchandise, it ran the risk of jeopardizing Customs control over improper releases.

■ There is also substantial evidence to document the contention that frozen juice was improperly stored. The auditors report indicates that in-bond and duty paid drums of juice were intermingled; material under a particular warehouse entry were not stored together; the material was not marked properly with warehouse entry numbers; and, some material was inaccessible to inventory. These are violations of 19 C.F.R. § 19.12(b)(6) which provides:

(b) *Security and storage.* The warehouse proprietor shall comply with the following security and storage requirements:

\* \* \* \* \* \*

(6) *Manner of storage.* Packages shall be received in the warehouse and recorded in the proprietor's inventory and accounting records according to their marks and numbers. ... The warehouse proprietor shall mark all shipments for identification, showing the general order or warehouse entry number or seizure number and the date of the general order, entry, or delivery ticket in the case of seizures. All containers covered by a given warehouse entry, general order or seizure shall be stored in the same location and not mixed with goods covered by any other entry, general order or seizure unless approval has been given in writing by the district director for an exception from this requirement. The proprietor must provide, upon request by a Cus-

toms officer, a record balance of goods covered by any warehouse entry, general order, or seizure so a physical count can be made to verify the accuracy of the record balance.

However, as the hearing officer concluded, this is relatively easy to correct and is of moderate significance. Although this does not seem the type of violation, which alone warrants suspension, it was just one of a pattern of violations for which suspension is authorized.

 The choice of an authorized penalty by the administrative agency in suspending plaintiff's bonded status is an exercise of discretion. *Tempo Trucking and Transfer Corp. v. Dickson*, 405 F.Supp. 506, 514 (E.D.N.Y.1975). In determining whether the decision reached by the administrative agency was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, the "reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. at 285, 95 S.Ct. at 442. Plaintiff has introduced evidence that its employees are now advised that no merchandise is to be released without proof that duty has been paid or without Customs authorization, and has also alleged that it has revised its system for marking and storing its refrigerated merchandise. It was further concluded by the hearing officer that there was no evidence that plaintiff intended to defraud the government by these practices or that it directly profited from the early withdrawals. These mitigating factors appear to have been considered since they were discussed by the hearing officer and it is reasonable to conclude that they influenced his recommendation for a one year suspension as opposed to total revocation. "An agency's choice of sanction is not to be overturned unless the reviewing court determines it is unwarranted in law ... or without justification in fact." *Kulkin v. Bergland*, 626 F.2d 181, 184 (1st Cir.1980), quoting *Butz*

*v. Glover Livestock Commission Co., Inc.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973). Based on a thorough review of the record, this Court is of the opinion that there is a basis in fact for the Regional Commissioner's decision.

### CONCLUSION

There being no procedural irregularities in the agency's action, no abuse of discretion, and substantial evidence on the record to support the Regional Commissioner's decision, plaintiff's motion must be denied and judgment entered in favor of defendant.