**AMERITRADE CORPORATION, Plaintiff,**

v.

**Harry W. CARNES, District Director Of Customs, et al., Defendants.**

No. 86-02-00180.

United States Court of International Trade.

May 20, 1986.

Herrick & Larsen (Herbert P. Larsen, Miami, Fla., on motion), and Reisman & Bryn (Mark S. Gallegos, Miami, Fla., on motion), for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office (Florence M. Peterson, New York City, on motion), for defendants.

## MEMORANDUM OPINION

CARMAN, Judge:

On February 18, 1986 the Court denied the motion of plaintiff Ameritrade Corporation for a preliminary injunction. Plaintiff had moved the Court to enjoin defendants from revoking plaintiff's bonded warehouse and cartman's licenses. Defendants cross-moved for judgment upon the agency record (Rule 56.1) and that motion, opposed by plaintiff, remains before the Court. This memorandum opinion addresses the Court's previous order denying plaintiff's motion for a preliminary injunction as well as defendants' cross-motion for judgment on the agency record. The Court grants in part and denies in part defendants' cross-motion, sustaining the decision of the United States Customs Service (Customs) as to plaintiff's bonded warehouse license, and remanding to Customs as to plaintiff's cartman's license.

## BACKGROUND

On August 28, 1985 Harry W. Carnes, District Director of Customs, notified plaintiff of his intent to revoke plaintiff's bonded warehouse status pursuant to 19 C.F.R. § 19.3(f) (1985). On November 21 and 22, 1985, Customs held a hearing at which plaintiff was represented by counsel. At the hearing plaintiff's counsel agreed to treat the District Director's August 28 letter as proper notice of Customs' intent to also revoke plaintiff's cartman's license. On December 30, 1985 the hearing officer forwarded to the Regional Commissioner of Customs his recommendation that plaintiff's bonded warehouse and cartman's licenses be revoked. On February 4, 1986 the Regional Commissioner notified plaintiff of his decision to revoke its licenses.

Upon receiving notice of the Regional Commissioner's decision, plaintiff moved for a temporary restraining order, which the Court granted pending a hearing on plaintiff's motion for a preliminary injunction. On February 18, 1986 the Court held a hearing, ruling from the bench to dissolve the temporary restraining order and denying plaintiff's motion for a preliminary injunction. The parties agreed to an expedited briefing schedule on the motion for judgment on the agency record. On February 28 plaintiff filed a motion for certification for appeal, which the Court denied. On March 7 plaintiff filed a motion requesting a ninety day extension for filing its brief in response to defendants' cross-motion for judgment on the agency record. The Court denied that motion as well. On March 25 defendants filed a motion for a protective order providing that discovery not be had.

## OPINION

### I. The Preliminary Injunction

■ To obtain a preliminary injunction a party must show (1) that it is threatened with irreparable harm, (2) that the public interest would best be served by an injunction, (3) that the party is likely to succeed on the merits, and (4) that the balance of hardships favors the moving party. See *S.J. Stile Associates v. Snyder*, 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981). In *DiJub v. United States*, 1 CIT 42, 52–53, 505 F.Supp. 1113 (1980), this court held that the loss of a cartman's license, without more, did not constitute irreparable harm. Similarly, the Court in the instant case reasoned that loss of the

bonded warehouse and cartman's licenses did not cause irreparable harm. *Cf. Manufacture de Machines du Haut-Rhin v. Von Raab*, 6 CIT ——, Slip Op. 83–77 (July 25, 1983) (lost profits, lost good will and tarnished reputation found not to constitute irreparable harm as condition precedent to jurisdiction under 28 U.S.C. § 1581(h)). Because plaintiff failed to show that it would be irreparably harmed by loss of its licenses pending a decision on the merits, the Court denied its motion for a preliminary injunction.

## II. *Judgment Upon the Agency Record*

The District Director notified plaintiff of his intent to revoke its bonded warehouse status because plaintiff had violated Customs regulations 19 C.F.R. §§ 19.6(e)(2) and 19.6(b)(1). 19 C.F.R. § 19(e)(2) states:

> The district director may revoke or suspend for cause the right of a proprietor to continue the bonded status of the warehouse ... if the warehouse proprietor refuses or neglects to obey any proper order of a Customs officer or any Customs order, rule, or regulation relative to the operation or administration of a bonded warehouse.

The other regulation, 19 C.F.R. § 19.6(b)(1), provides for the removal of bonded merchandise from a bonded warehouse without the physical supervision of a Customs officer. Under that provision, the warehouse proprietor is "relieved of responsibility only if it receives the signed receipt on the withdrawal or removal document of the carrier named in the document."

Customs alleged that plaintiff violated these regulations by selling approximately 2,900 cases of bonded liquor to an unbonded warehouse, from which they were then sold into United States commerce without payment of duties. Customs also alleged that plaintiff's employees falsified the withdrawal documents on the liquor. At the hearing Customs presented unrefuted evidence that plaintiff's employees had prepared withdrawal documents (CF 7512s) showing that the liquor was to be delivered by plaintiff's bonded cartman to another

bonded cartman and subsequently to an exporting carrier; that plaintiff's cartman instead sold the liquor to America First, an unbonded warehouse; and that America First sold the liquor in the United States without paying duties. Plaintiff's main defense was that its employees completed the CF 7512s according to instructions from America First and that plaintiff's president was unaware of the falsification of the documents or the diversion of the liquor by America First. The hearing officer found that plaintiff's contentions were unsupported by the evidence and recommended that plaintiff's license be revoked.

The Regional Commissioner reviewed the recommendation and the record of the hearing and issued a decision, supported by an eighteen page opinion, to revoke plaintiff's warehouse and cartman's licenses. The Regional Commissioner stated that there was no doubt in his mind that bonded liquor from plaintiff's warehouse was diverted without payment of duties, and that plaintiff filed false CF 7512s "knowing these documents to be false, or with reckless disregard for their truth and accuracy." Decision of Regional Commissioner Kwas 7. The Regional Commissioner concluded that plaintiff violated Customs rules and regulations regarding the in-bond movement and documentation of bonded liquor, and that the District Director's decision to revoke plaintiff's bonded warehouse status was not an abuse of discretion or a violation of Customs rules, regulations or proceedings. *Id.* at 15.

Plaintiff challenges the Regional Commissioner's decision as arbitrary and capricious, an abuse of discretion, and unsupported by substantial evidence on the record. Plaintiff also challenges the Regional Commissioner's action revoking its cartman's license as *ultra vires*, claiming the Regional Commissioner lacked power to revoke its cartman's license.

### A. *The Bonded Warehouse Status*

■ Plaintiff first contends that the Regional Commissioner's decision is unsupported by substantial evidence in the

record. According to plaintiff, evidence at the hearing showed that plaintiff misdelivered the bonded liquor through mistake of fact and excusable neglect. The clear evidence presented at the hearing was that plaintiff's president signed 329 false withdrawal documents and that almost 2,900 cases of bonded liquor were sold by plaintiff to an unbonded warehouse and from there sold into United States Commerce without payment of duties. This is clearly sufficient evidence to support the Regional Commissioner's conclusion that even if plaintiff's president had unknowingly signed false documents, his neglect in failing to discover the falsification or the diversion of the liquor was not excusable. Plaintiff has essentially asked the Court to weigh the evidence and arrive at an independent conclusion. The Court, however, is bound to uphold the agency so long as there is such evidence in the record as a reasonable mind would accept to support the conclusion reached. *See Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Such evidence exists in this record.

■ Plaintiff further contends that the Regional Commissioner's decision was improper because the prosecutor for Customs at the hearing drafted some portion of the supporting opinion. Plaintiff offers no proof of this, nor any proof that the Regional Commissioner did not personally review the record and consider the evidence. Even if the prosecutor did participate in drafting the opinion, that would not be sufficient to show that the Regional Commissioner did not properly and impartially consider the record. *See Baltimore Security Warehouse Co. v. United States*, 9 CIT ——, Slip Op. 85–131 (December 13, 1985).

■ Plaintiff challenges Customs' actions on a host of other grounds, suggesting first that the Customs regulations cited by the District Director in his notice of intent to revoke the bonded warehouse status are not capable of violation and therefore cannot provide a basis for revocation. The regulations cited by the District Director were 19 C.F.R. § 19.3(e)(2), which

provides grounds for revocation of bonded warehouse status, and § 19.6(b)(1), which provides that the warehouse proprietor is responsible for bonded merchandise until it is signed for by the bonded cartman shown on the withdrawal documents. Regardless of whether the regulations were capable of violation, the District Director's letter provided plaintiff sufficient notice of the charges against it prior to the hearing. Customs introduced evidence at the hearing to prove these charges. In reviewing that evidence, the Regional Commissioner found that plaintiff had violated a variety of Customs regulations providing for the withdrawal and movement of in-bond liquor. Based upon these violations, the Regional Commissioner was within his authority in revoking plaintiff's license under 19 C.F.R. § 19.3(e)(2).

■ In a similar vein plaintiff complains that its due process rights were violated because Customs regulation 19 C.F.R. § 19.3 is unreasonable in that it allows revocation on certain enumerated grounds and then includes a catchall provision allowing revocation for violation of *any* Customs rule, regulation or order. Plaintiff's argument is unsupported by any authority or reasoned argument. Congress delegated to Customs the authority to establish regulations for granting bonded warehouse status. 19 U.S.C. § 1556 (1982). It is reasonable for Customs to condition conferral of that privilege upon compliance with all Customs regulations.

■ Plaintiff also argues that Customs violated its own policies and practices because it did not grant plaintiff an opportunity to correct its practice of delivering liquor to an unbonded consolidator. Plaintiff points to no evidence showing that Customs had a policy of allowing bonded warehouses to correct fraudulent practices once it discovered them. Of similar tenor are plaintiff's arguments that Customs generally tolerated the practice of delivering to an unbonded consolidator and unfairly singled out plaintiff for punishment, and that Customs' punishment was unnecessarily harsh. Customs has discretion to decide

which violators it will pursue and what punishment it will mete out. *See Tempo Trucking & Transfer Corp. v. Dickson,* 405 F.Supp. 506, 514 (E.D.N.Y.1975).

Plaintiff's final argument is that it suffered procedural unfairness because Customs did not provide it with a copy of the hearing officer's recommendation. Plaintiff points to no statute or regulation requiring Customs to provide it with such a copy, nor does plaintiff claim it was in any way prejudiced. Moreover, the recommendation was a part of the official record which plaintiff could have received upon request. *See Baltimore Security Warehouse Co. v. United States,* 9 CIT ——, Slip Op. 85-31, 8 (December 13, 1985).

### B. *The Cartman's License*

Both plaintiff's bonded warehouse status and bonded cartman's license were purportedly revoked by the Regional Commissioner's decision of February 4, 1986. Plaintiff argues that although Customs regulations give the Regional Commissioner authority to revoke bonded warehouse status, *see* 19 C.F.R. § 19.3, the authority to revoke a cartman's license after an appeal and hearing is vested by regulation in the Commissioner of Customs. *See* 19 C.F.R. § 112.30(3)(e). Defendant relies upon the stipulation of plaintiff's counsel at the hearing that the hearing would resolve the issue of both licenses. Plaintiff cannot now be heard to complain, defendant argues, because it agreed to the single proceeding and decision.

Although plaintiff could agree at the hearing that notice of intent to revoke the cartman's license was adequate, and that the hearing transcript and hearing officer's recommendation could serve as the basis for decision regarding revocation of both licenses, plaintiff's stipulation is ineffective to grant a power of revocation to the Regional Commissioner that the regulations do not give. *Cf. United States v. Nixon,* 418 U.S. 683, 694–96, 94 S.Ct. 3090, 3100–3101, 41 L.Ed.2d 1039 (1974) (Attorney General may not exercise a power he has delegated by regulation to Special Prosecutor).

Accordingly, that portion of the Regional Commissioner's decision revoking plaintiff's cartman's license is reversed and the case is remanded to Customs with the instruction that the hearing transcript and hearing officer's recommendation may serve as the basis for decision, but any decision on the status of plaintiff's cartman's license must be rendered by the Commissioner of Customs, as provided in the regulations.