

Herbert P. Larsen, New York City, argued for plaintiff-appellant; Also on brief was Mark S. Gallegos, Miami, Fla., of counsel.

Michael P. Maxwell, Commercial Litigation Branch, Dept. of Justice, New York City, argued for defendants-appellees; With him on brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge Intern. Trade Field Office.

Before DAVIS, NEWMAN and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

**AMERITRADE CORPORATION,**
**Plaintiff–Appellant,**

v.

**Harry W. CARNES, Edward F. Kwas and The United States of America, Defendants–Appellees.**

No. 87–1014.

United States Court of Appeals, Federal Circuit.

Oct. 1, 1987.

Opinion Issued Oct. 20, 1987.

## DECISION

The judgment of the Court of International Trade in *Ameritrade Corp. v. Carnes*, 637 F.Supp. 1213 (CIT 1986), sustaining the United States Customs Service's (Customs Service) decision to revoke Ameritrade Corporation's (Ameritrade) bonded warehouse license is affirmed.[*]

## OPINION

The Customs Service revoked Ameritrade's bonded warehouse license after

---

* Ameritrade's appeal herein of the orders of the Court of International Trade denying a preliminary injunction and refusing to certify the denial of injunctive relief for interlocutory appeal are moot in view of the decision on the merits.

finding that it had violated 19 C.F.R. §§ 19.6(b)(1) and 19.3(e)(2) (1985) by "selling approximately 2,900 cases of bonded liquor to an unbonded warehouse ..." which subsequently resold the liquor in the United States without payment of duties. The Customs Service also determined that Ameritrade had filed false or fraudulent Customs Service forms "knowing these documents to be false, or with reckless disregard for their truth and accuracy."

Before the Court of International Trade, Ameritrade contended primarily that the decision of the Customs Service was unsupported by substantial evidence. The court determined, however, that "[t]he clear evidence presented at the hearing was that [Ameritrade's] president signed 329 false withdrawal documents and that almost 2,900 cases of bonded liquor were sold by [Ameritrade] to an unbonded warehouse and from there sold into United States commerce without payment of duties." It noted that there was unrefuted evidence that Ameritrade's employees had prepared withdrawal documents showing that the liquor was to be delivered by Ameritrade's bonded cartman to another bonded cartman and subsequently to an exporting carrier, whereas Ameritrade's cartman instead sold the liquor to America First Import & Export Corporation, an unbonded warehouse. Ameritrade's procedural arguments were also rejected by the court.

On appeal, Ameritrade, while conceding that the diversion of liquor occurred, argues that there was no evidence of Ameritrade's "complicity" in a diversion scheme with the president of the unbonded warehouse selling the diverted liquor. As a bonded warehouse, Ameritrade had full responsibility to ensure that its merchandise was disposed of in accordance with all applicable Customs regulations. *See* 19 C.F.R. § 19.6(b)(1) (1985):

> In the case of merchandise to be carted or transported in bond from the warehouse, the proprietor will be relieved of responsibility only if it receives the signed receipt on the withdrawal or removal document of the carrier named in the document.

It failed to do this when it falsified the withdrawal documents and permitted the bonded liquor from its warehouse to be delivered to an unbonded warehouse. Section 19.3(e)(2) provides for the revocation or suspension of a bonded warehouse license if

> [t]he warehouse proprietor refuses or neglects to obey any proper order of a Customs officer or any Customs order, rule, or regulation relative to the operation or administration of a bonded warehouse....

19 C.F.R. § 19.3(e)(2) (1985).

Although the Customs Service regulation does not hold warehouse proprietors strictly liable for any violations that may occur, there is an expectation of reasonable care in operating under a bonded warehouse license. The record before us supports a finding that Ameritrade conducted its business with respect to the diverted liquor "with reckless disregard" of the Customs regulations. Both the Customs Service and the Court of International Trade determined that there was sufficient evidence to support the conclusion that Ameritrade was aware of the diversion. We find no basis for overturning this conclusion and therefore affirm the judgment of the Court of International Trade.

AFFIRMED.