Daniel M. KODEN, Plaintiff-Appellant,

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Immigration and Naturalization Service, Defendant-Appellee.**

**No. 77–1500.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 30, 1977.

Decided Oct. 27, 1977.

Edward N. Morris, Chicago, Ill., for plaintiff-appellant.

Thomas P. Sullivan, U. S. Atty., Beverly A. Susler, Asst. U. S. Atty., Chicago, Ill., for defendant-appellee.

Before SPRECHER, BAUER and WOOD, Circuit Judges.

SPRECHER, Circuit Judge.

The primary question in this appeal involves the power of an administrative agency to bar or suspend practitioners appearing before it.

I

The plaintiff is an attorney who was admitted to the bar of the State of Missouri in 1966. In August of 1968, after having moved to Illinois, he commenced employment with a charitable organization known as the Immigrants' Service League of the Travelers Aid Society of Metropolitan Chicago. The plaintiff's principal tasks while employed by the League involved advising and representing League clients in connection with their immigration problems. In January, 1971, he resigned from his position at the League after it became known to his superiors that he was also representing aliens in his private capacity.

The plaintiff was not licensed to practice in Illinois but the regulations of the Immigration and Naturalization Service permit representation before it by "any person who is a member in good standing of the bar of the highest court of any State." 8 C.F.R. §§ 1.1(f) and 292.1(a)(1).

On July 6, 1971, the Regional Commissioner for what was then the Northwest (but is now the Northern) Regional Office of the Immigration and Naturalization Service (the Service) caused to be served on the plaintiff a complaint, entitled Notice of Proposed Disbarment Proceedings, specifying six numbered allegations of misconduct which the Service alleged as grounds for discipline, together with a Notice to Show Cause why a motion seeking his disbarment from further representation before the Service should not be made to the Board of Immigration Appeals (the Board). The plaintiff denied the charges and requested a hearing, notice of which was given to the plaintiff in writing by the Regional Commissioner under date of February 29, 1972.

A hearing was held in Chicago, Illinois, before a designated presiding officer on eight days from April 19 to May 2, 1972. On October 24, 1972, the Northwest Regional Commissioner recommended that the Board of Immigration Appeals bar the plaintiff from further representation before the Service and the Board.

The Board of Immigration Appeals rendered its 33-page opinion on August 30, 1974, suspending the plaintiff from practicing law before the Service and Board for a period of one year. The Board sustained two of the original six charges: (1) that in violation of 8 C.F.R. § 292.3(a)(4),[1] the plaintiff wilfully misled and deceived an alien by purporting to represent her for a fee whereas in fact he did not do so and (2) that in violation of 8 C.F.R. § 292.3(a)(5),[2] the plaintiff employed a "runner" to solicit clients. The Board imposed a six-month suspension for each violation and concluded that "the proven violations are sufficiently serious to require that the two six-month periods of suspension run consecutively."

On July 22, 1976, the Deputy Attorney General affirmed the Board's findings and order on the sustained charges, ordering that the plaintiff be suspended for one year. On August 16, 1976, the Board entered the final order of suspension. The Deputy Attorney General had also remanded the case to the Board for further consideration of another charge which the Board had earlier dismissed, and the Board in turn had remanded that issue to the Regional Commissioner. On September 21, 1976, the Regional Commissioner notified the plaintiff that inasmuch as he had been ordered suspended for one year, no further action was contemplated on charges other than those already sustained and ordered that action on the remaining charges be terminated.

On August 18, 1976, the plaintiff had filed his complaint requesting that the district court "exercise its statutory power to review administrative decisions and its inherent power to control the practice of attorneys before any tribunal, administrative or judicial in this District." The district court assumed that jurisdiction was intended by the plaintiff to be based on the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. Finding no genuine issue of material fact, the court granted the defendant Service's motion for summary judgment.

The plaintiff raises three issues on appeal: (1) the Service and Board lack the authority to suspend an attorney's right to practice and represent clients before them; (2) there was insufficient evidence to sustain either of the two sustained charges; and (3) the penalty for each charge was too severe.

II

The Immigration and Nationality Act of June 27, 1952 provided for an Immigration and Naturalization Service within the Department of Justice, 8 U.S.C. § 1101(a)(34), and charged the Attorney General with the administration and enforcement of the Act and all other laws relating to the immigration and naturalization of aliens, 8 U.S.C. § 1103(a).[3] The Attorney General "shall establish such regulations . . . as he deems necessary for carrying out his authority . . . ." 8 U.S.C. § 1103.

The Commissioner of Immigration and Naturalization is appointed by the President with the advice and consent of the

---

1. 8 C.F.R. § 292.3(a)(4) provides:

 (a) *Grounds.* The Board, with the approval of the Attorney General, may suspend or bar from further practice an attorney or representative if it shall find that it is in the public interest to do so. The suspension or disbarment of an attorney or representative who is within one or more of the following categories shall be deemed to be in the public interest, for the purpose of this part, but the enumeration of the following categories does not establish the exclusive grounds for suspension or disbarment in the public interest:

 \* \* \* \* \* \*

 (4) Who willfully deceives, misleads, or threatens any party to a case concerning any matter relating to the case; . . .

2. 8 C.F.R. § 292.3(a)(5) provides in part:

 (5) Who solicits practice in any unethical or unprofessional manner, including, but not limited to, the use of runners, . . . ..

3. Except insofar as the Act or other laws "relate to the powers, functions, and duties conferred upon the President, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers." 8 U.S.C. § 1103(a). The Secretary of State is charged with the administration and enforcement of immigration and naturalization matters dealing with diplomatic and consular officers, passports, visas, and the determination of the nationality of persons not within the United States. 8 U.S.C. § 1104(a).

Senate and is charged with the administration of the Immigration and Naturalization Service. 8 U.S.C. § 1103(b). He is also charged with all responsibilities and authority conferred on the Attorney General as may be delegated to him by the Attorney General or which may be prescribed by the Attorney General. 8 U.S.C. § 1103(b). The Attorney General has delegated to the Commissioner certain of his powers, 8 C.F.R. § 2.1, who, in turn, has delegated certain of his powers to Regional Commissioners, 8 C.F.R. § 103.1(m). The Attorney General has also established the Board of Immigration Appeals "subject to the general supervision of the Deputy Attorney General" to hear appeals from various administrative decisions within the Service. 8 C.F.R. § 3.1(a)(1) and (b).[4]

Regulations governing the activities of the Service have been promulgated and appear in 8 C.F.R., Chapter 1, Parts 1 through 499. Part 292 deals with "Representation and Appearances" and includes § 292.3, entitled "Suspension or disbarment."

Although the Part 292 regulations of the Service differ somewhat in language at the present time from the period (1969–1971) during which the plaintiff was charged with the acts leading to his suspension, the basic principles followed in permitting "Representation and Appearances" remain substantially the same. An alien may be represented by an attorney in good standing of the bar of the highest court of any state, or by a lay person who is the accredited representative of a religious, charitable, social service, or similar organization recognized by the Board, or even by a lay person who is a reputable individual of good moral character who appears without remuneration in a particular case by the permission of the Board or Service. 8 C.F.R. § 292.1.

Any attorney or representative may be suspended or barred from further practice before the Service or Board by action of the Board with the approval of the Attorney General if it is in the public interest to do so (*see* note 1 *supra*) for any of the several grounds (13 in number in 1969–1971 and presently 14 in number) set forth in 8 C.F.R. § 292.3(a). The procedure attendant upon a suspension or bar is set forth in detail in 8 C.F.R. § 292.3(b).[5] No claim is

4. At the time of the acts charged against the plaintiff leading to his suspension (1969–1971) and while this proceeding against the plaintiff was pending, the regulations provided that the Board "shall be under the supervision and direction of the Attorney General." 8 C.F.R. § 3.1(a) (Rev. as of January 1, 1971). Both now and then, 8 C.F.R. § 292.3(b) provided that orders of the Board to suspend or disbar required reference of the record to the Attorney General for review of the Board's decision and "the order of the Attorney General shall be the final determination of the proceeding." However, in this case, the Attorney General disqualified himself and the Deputy Attorney General acted pursuant to 28 U.S.C. § 508(a), which provides that the Deputy Attorney General may exercise all the duties of the office whenever a vacancy exists in the office of the Attorney General.

5. During 1969–1971, 8 C.F.R. § 292.3(b) read as follows:

(b) *Procedure.* If an investigation establishes to the satisfaction of the regional commissioner that suspension or disbarment proceedings should be instituted, he shall cause a copy of the written charges to be served upon the attorney or representative, either personally or by registered mail, with notice to show cause within a specified time, not less than 30 days, why he should not be suspended or disbarred. The notice shall also advise that after answer has been made and the matter is at issue, a hearing before a representative of the regional commissioner may be requested. When a hearing is requested, the regional commissioner will specify the time and place therefor and specifically designate the officer who shall preside and the officer who shall present the evidence. If an answer is not received within 3 days after expiration of the period prescribed to show cause, defense to the charges is waived. When a hearing is not requested in the answer, the regional commissioner shall forward the complete record to the Board with his recommendation. The attorney or representative, either with or without counsel, and the regional commissioner, by the service officer within the purview of § 3.1(e) of this chapter, shall have the privilege of appearing before the Board for oral argument at a time specified by the Board. The Board shall consider the record and render its decision. The order of the Board shall constitute the final disposition of the proceeding: *Provided, however,* That if the order is to suspend or disbar, or if any one of the circumstances described in § 3.1(h) of this chapter is

made in the present case that the prescribed procedure was not followed or that the plaintiff was deprived of due process in the course of that procedure· at any time throughout the administrative process.

### III

■ Although neither party has questioned subject-matter jurisdiction, a federal appellate court must assure itself of the existence of federal jurisdiction. *Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). The district court assumed jurisdiction on the basis of the Administrative Procedure Act.

In *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Supreme Court held that the better view is that the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions.

On October 21, 1976, Congress enacted Pub.L. 94–574, 90 Stat. 2721, which amends 28 U.S.C. § 1331(a) to eliminate the requirement of a specified amount in controversy as a prerequisite to the maintenance of "any [§ 1331] action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." The Court held that the obvious effect of this modification, subject only to preclusion-of-review statutes created or retained by Congress, is to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate.

We have not been alerted to, nor do we find, any preclusion-of-review statutes created by Congress affecting the right of judicial review in this case. And, of course, once an independent basis for federal jurisdiction exists, the APA applies to each federal agency not expressly excluded.

■ An "agency" subject to the Administrative Procedure Act (APA) is "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." 5 U.S.C. § 551(1). The primary purpose of the APA is to regulate the processes of rule making and adjudication, but even those administrative entities that perform neither function are nevertheless agencies. The APA governs "any administrative unit with substantial independent authority in the exercise of specific functions." *Soucie v. David*, 145 U.S.App.D.C. 144, 150, 448 F.2d 1067, 1073 (1971).

■ The Immigration and Naturalization Service and the Board of Immigration Appeals, both under the supervision of the Attorney General or the Deputy Attorney General in the Department of Justice, are "agencies" within the terms of the APA. *Blackwell College of Business v. Attorney General*, 147 U.S.App.D.C. 85, 90, 454 F.2d 928, 933 (1971).

### IV

The plaintiff has first argued that the Service lacks the power to institute disbarment or disciplinary proceedings.

In *Goldsmith v. United States Board of Tax Appeals*, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926), the Supreme Court held that an administrative agency which has general authority to prescribe its rules of procedure may set standards for determining who may practice before it. In that case the act creating the Board of Tax Appeals provided that "the proceedings of the Board and its divisions shall be conducted in accordance with such rules of evidence and procedure as the Board may prescribe." The Court said at page 121, 46 S.Ct. at page 217:

> We think that the character of the work to be done by the Board, the quasi judicial nature of its duties, the magnitude of the interests to be affected by its

present, the Board shall refer the record to the Attorney General for review of its decision and in such case the order of the Attorney General shall be the final determination of the proceeding. When the final order is for suspension or disbarment, the attorney or representative shall not thereafter be permitted to practice until authorized by the Board.

decisions, all require that those who represent the taxpayers in the hearings should be persons whose qualities as lawyers or accountants will secure proper service to their clients and to help the Board in the discharge of its important duties.

The Court recognized that many statutes creating executive or administrative agencies expressly empower the agency to prescribe qualifications of those who practice before the agency or require a list of enrolled attorneys to which a practitioner must be admitted by the agency. The Court nevertheless held that even in the absence of such express provisions, an agency empowered to prescribe its own rules has the implied power to determine who can practice before it. The Court said at page 122, 46 S.Ct. at page 217:

> Our view . . . is that so necessary is the power and so usual is it that the general words by which the Board is vested with the authority to prescribe the procedure in accordance with which its business shall be conducted include as part of the procedure rules of practice for the admission of attorneys.

In *Herman v. Dulles*, 92 U.S.App.D.C. 303, 205 F.2d 715 (1953), the Court of Appeals held that the International Claims Commission in the Department of State, which had express authority "[to] prescribe such rules and regulations as may be necessary to enable it to carry out its functions" (22 U.S.C. § 1622(c)), had implied authority to prescribe rules both setting standards for determining who may practice before it and also adopting procedures for disciplining those who failed to conform to such standards.

In *Schwebel v. Orrick*, 153 F.Supp. 701, 704 (D.D.C.1957), *aff'd on other grounds*, 102 U.S.App.D.C. 210, 251 F.2d 919, *cert. denied*, 356 U.S. 927, 78 S.Ct. 716, 2 L.Ed.2d 759 (1958) (footnotes omitted), the court said:

> In the exercise of its jurisdiction to determine the legal question of the authority of the administrative body to maintain the threatened action, the court holds that the Securities and Exchange Commission has implied authority under its general statutory power to make rules and regulations necessary for the execution of its functions to establish qualifications for attorneys practicing before it and to take disciplinary action against attorneys found guilty of unethical or improper professional conduct and that the Commission has adequately implemented this authority by its . . . [rules]. It is not essential that a roster of the bar be maintained, but is sufficient that the Commission has prescribed by regulation the qualifications for admission to practice before it.

▪ It is elementary that any court or administrative agency which has the power to admit attorneys to practice has the authority to disbar or discipline attorneys for unprofessional conduct. *Phipps v. Wilson*, 186 F.2d 748, 751 (7th Cir. 1951); *In re Rhodes*, 370 F.2d 411, 413 (8th Cir. 1967).

The stated authority for the promulgation of Part 292 of the rules and regulations of the Immigration and Naturalization Service are §§ 1103 and 1362 of Title 8 of U.S.C. We have previously noted that § 1103 empowers the Attorney General to "establish such regulations . . . as he deems necessary for carrying out his authority" under the laws relating to the immigration and naturalization of aliens. Section 1362 provides that:

> In any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, *authorized to practice in such proceedings*, as he shall choose.

(Emphasis supplied). The Congressional authority bestowed by §§ 1103 and 1362 is more than adequate to satisfy the require-

ments of *Goldsmith v. Board of Tax Appeals, supra.*

 The plaintiff has argued that an agency, in order to discipline a practitioner, must have established a separate bar for itself, which is directly contradicted by *Goldsmith*, 270 U.S. at 121–22, 46 S.Ct. 215; that Congress must have expressly provided for disciplinary powers, which is contrary to the authority cited above; and that discipline, if exacted must be in connection with a proceeding pending before the Service or Board. This last point was perhaps best answered by the Tenth Circuit in a case where a federal district court had disciplined an attorney practicing in that court. In the case of *In re Carroll*, 416 F.2d 585, 587 (10th Cir. 1969) (per curiam), *cert. denied sub nom., Carroll v. United States District Court*, 396 U.S. 1011, 90 S.Ct. 570, 24 L.Ed.2d 503 (1970), the Court of Appeals said:

> There is no requirement in the authorities or by the practice that the incident for which the member of the bar is sought to be charged need have occurred in a proceeding then pending before the court as appellant urges. In fact, most disciplinary proceedings relate to matters which are not related to pending proceedings.

The order here suspends the plaintiff from practice only before the Service and Board. The acts with which he was charged leading to the suspension relate only to the kind of practice which he is authorized to carry on in the State of Illinois by virtue of the regulations which he

now seeks to invalidate. Finally, the Supreme Court in *Goldsmith* expressly noted that the "magnitude of the interests to be affected by [an agency's] decisions" requires that those who represent persons before the agency "should be persons whose qualities as lawyers . . . will secure proper service to their clients and to help [the agency] in the discharge of its important duties." 270 U.S. at 121, 46 S.Ct. at 217.

 The plaintiff has further argued that the Administrative Procedure Act, 5 U.S.C. § 558(c)(2) required the Service to warn the plaintiff prior to initiating disciplinary proceedings.[6] Assuming, without being forced to decide, that this proceeding involves the type of license covered by § 558(c), and assuming, again without being required to decide, that this proceeding does not fall within the public interest exception (*see* note 1 *supra*, 8 C.F.R. § 292.3(a)), we conclude that this case comes within the "willfulness" exception in any event.

As recently as in *Silverman v. Commodity Futures Trading Commission*, 549 F.2d 28, 31 (7th Cir. 1977), we adopted an earlier Seventh Circuit definition of willfulness (*Goodman v. Benson*, 286 F.2d 896, 900 (7th Cir. 1961)) as follows:

> We think it clear that if a person 1) intentionally does an act which is prohibited,—irrespective of evil motive or reliance on erroneous advice, or 2) acts with careless disregard of statutory requirements, the violation is wilful.

**6.** 5 U.S.C. § 558(c) provides:

> When application is made for a license required by law, the agency, with due regard for the rights and privileges of all the interested parties or adversely affected persons and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this title or other proceedings required by law and shall make its decision. *Except in cases of willfulness or those in which public* health, *interest,* or safety *requires otherwise,* the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—

> (1) notice by the agency in writing of the facts or conduct which may warrant the action; and
> (2) opportunity to demonstrate or achieve compliance with all lawful requirements.
> When the licensee has made timely and sufficient application for a renewal of a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency.
> (Emphasis supplied).

See also United States v. Illinois Central Railroad Co., 303 U.S. 239, 242–43, 58 S.Ct. 533, 82 L.Ed. 773 (1938).

We conclude that the Service and Board had ample statutory and regulatory power to enter the disciplinary order suspending the plaintiff.

V

The plaintiff has alleged that there is insufficient evidence to support the two charges sustained against him. In regard to the "runner" charge, the argument is the standard one regarding insufficiency. In the taking-of-money-without-performing-services charge, the argument is that the district court did not "specifically sustain" the charge.

The latter argument is baseless. The district court in its memorandum order considered each of the two charges (page 2 of order) and, finding no genuine issue of material fact, granted the Service's motion for summary judgment upon the Deputy Attorney General's order of a one-year suspension in its totality (page 9 of order).

In regard to the runner charge, the administrative hearing was complete, the Board carefully considered the evidence, the Deputy Attorney General again considered it, and the district court considered it a third time.

The Board, in dismissing four charges against the plaintiff and sustaining two, applied the following standard:

. . . [W]e have concluded that any allegations of misconduct in disbarment proceedings under 8 C.F.R. Part 292 must be established by evidence that is clear, convincing and unequivocal before discipline may be imposed. Our adoption of this standard, which is quite favorable to the [plaintiff], is consistent with the approach taken in many jurisdictions. . . . Finally, we are of the opinion that more than a mere preponderance of the evidence should be required to deprive an attorney of his right to practice his pro-

fession, even if that deprivation extends only to one area of the law.

The district court held that "[t]he standard for direct judicial review of administrative decisions coming to courts under either the Administrative Procedure Act or the explicit provisions of the statutes creating administrative agencies whose decisions are subject to judicial review, is the substantial evidence test," (page 7 of order), citing Universal Camera Corp. v. Labor Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950). See also Kivitz v. Securities and Exchange Commission, 154 U.S.App.D.C. 372, 377, 475 F.2d 956, 961 (1973). The evidence was sufficient to support each of the two charges.

In regard to plaintiff's final argument, we do not believe under the circumstances of this case that we should disturb the penalty assessed. In a different context, where the Secretary of Agriculture had suspended a registrant under the Packers and Stockyards Act of 1921 but the Court of Appeals had set aside the suspension, the Supreme Court concluded in Butz v. Glover Livestock Commission Co., 411 U.S. 182, 183, 93 S.Ct. 1455, 1457, 36 L.Ed.2d 142 (1973), "that the setting aside of the suspension was an impermissible judicial intrusion into the administrative domain under the circumstances of this case . . ."

The judgment of the district court is affirmed.

AFFIRMED.