## MATTER OF SPARROW

### In Suspension Proceedings Under 8 C.F.R. § 292.3

*Decided by Board June 22, 1994*

(1) Because the Notice of Entry of Appearance as Attorney or Representative (Form G-28) is designed to determine whether an individual is an attorney within the meaning of 8 C.F.R. § 1.1(f) (1994), an attorney filing this form has a duty to disclose disciplinary actions or other restrictions on his practice of law in the bars of courts in jurisdictions other than those in which he claims to be in good standing.

(2) Where an attorney in disciplinary proceedings under 8 C.F.R. § 292.3(a)(10) (1994) is charged with willfully making false and material statements or representations with respect to his qualifications or authority to represent others in any case, his false statement or representation is deemed material if it has a tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed.

(3) A 10-year suspension from the practice of law before the Immigration and Naturalization Service and the Executive Office for Immigration Review is appropriate where the respondent has a conviction which involved a conspiracy to violate immigration laws through a sham marriage scheme, making false statements to the Service, suborning perjury, and stealing government property; the respondent is under suspension from the practice of law in three states; the respondent misrepresented his qualifications or authority to represent others in immigration proceedings on Notices of Entry of Appearance; and the respondent did not report his conviction to the Executive Office for Immigration Review or state bar authorities.

CHARGES:  8 C.F.R. § 292.3(a)(3)
              8 C.F.R. § 292.3(a)(7)
              8 C.F.R. § 292.3(a)(10)
              8 C.F.R. § 292.3(a)(13)

ON BEHALF OF RESPONDENT:
  Sheila Brooks-Tahir, Esquire
  233 West Main Street
  Salisbury, Maryland 21801

ON BEHALF OF SERVICE:
  Rachel A. McCarthy
  Assistant Regional
  Counsel

BY: Dunne, Acting Chairman; Heilman, Board Member; Grant, Temporary Board Member

On January 11, 1991, the Acting General Counsel of the Immigration and Naturalization Service issued a Petition for Attorney Discipline against the respondent pursuant to the provisions for

suspension or disbarment under 8 C.F.R. § 292.3 (1991).[1] The Petition for Attorney Discipline contains 11 charges against the respondent alleging violations of 8 C.F.R. §§ 292.3(a)(3), (7), (10), and (13). These charges arise from the respondent's January 10, 1983, conviction for involvement in sham marriage schemes designed to deceive the Service, the suspensions from the practice of law imposed by several jurisdictions as a result of the conviction, and the respondent's subsequent representations regarding his qualifications or authority to represent others.

The Petition for Attorney Discipline was served on the respondent and filed with the Office of the Chief Immigration Judge in accordance with 8 C.F.R. § 292.3(b)(ii). The respondent filed a response to the Petition for Attorney Discipline. A hearing was subsequently held before an assistant chief immigration judge. In his decision dated March 13, 1992, the assistant chief immigration judge found that Charge VIII had not been proven and dismissed that charge. He found that the other charges had been proven, however, and ordered that the respondent be suspended from the practice of law before the Service and the Executive Office for Immigration Review for a period of 1 year and 9 months, with leave to petition the court for reinstatement on March 12, 1993. The Service appealed from the assistant chief immigration judge's dismissal of Charge VIII. The respondent appealed from the assistant chief immigration judge's findings regarding the other charges and from the order of suspension. These appeals are the subject of the proceedings now before us.[2]

The regulatory grounds upon which the proceedings before us are based are set forth at 8 C.F.R. § 292.3 (1994),[3] which currently provides in pertinent part:

(a) *Grounds.* The Immigration Judge, Board, or Attorney General may suspend or bar from further practice before the Executive Office for Immigration Review or the Service, or may take other appropriate disciplinary action against, an attorney or

---

[1] This petition supersedes a petition issued by the Service against the respondent in February 1990, as the earlier petition was not signed or dated by the General Counsel of the Service.

[2] While the appeals were pending, the respondent submitted a motion to remand in order for the assistant chief immigration judge to consider documents which the respondent received from the Service pursuant to a Freedom of Information Act request. Remand for this purpose is unnecessary, as unredacted versions of these Service documents are already contained in the record as an exhibit, which was examined by the assistant chief immigration judge in camera.

[3] Since the Petition for Attorney Discipline was issued against the respondent, 8 C.F.R. § 292.3 (1991) has been revised. *See* 57 Fed. Reg. 11,574 (1992). As none of the revisions affects any of the issues in this case or any of the grounds alleged against the respondent in the Petition for Attorney Discipline, we refer to the current version of these regulations.

representative if it is found that it is in the public interest to do so. Appropriate disciplinary sanctions may include disbarment, suspension, reprimand or censure, or such other sanction as deemed appropriate. The suspension, disbarment, or imposition of other appropriate disciplinary action against an attorney or representative who is within one or more of the following categories shall be deemed to be in the public interest, for the purposes of this part, but the enumeration of the following categories does not constitute the exclusive grounds for discipline in the public interest:

. . . .

(3) Who willfully misleads, misinforms, or deceives an officer or employee of the Department of Justice concerning any material and relevant fact in connection with a case;

. . . .

(7) Who has been temporarily suspended, and such suspension is still in effect, or permanently disbarred, from practice in any court, Federal, State (including the District of Columbia), territorial, or insular;

. . . .

(10) Who willfully made false and material statements or representations with respect to his qualifications or authority to represent others in any case;

. . . .

(13) Who has been convicted of a felony, or, having been convicted of any crime is sentenced to imprisonment for a term of more than one year . . . .

In disciplinary proceedings under 8 C.F.R. § 292.3, which are based on the suspension from the practice of law by a state court, an attorney is entitled to the opportunity to present contentions and evidence regarding any alleged fundamental procedural inadequacy of his state court suspension and any alleged insubstantiality of evidence supporting it. *Matter of Bogart*, 15 I&N Dec. 552 (BIA 1975; A.G., BIA 1976). Before discipline may be imposed in disciplinary proceedings under 8 C.F.R. § 292.3, any allegations of misconduct must be established by evidence which is "clear, convincing, and unequivocal." 8 C.F.R. § 292.3(b)(1)(iv); *see also Matter of Solomon*, 16 I&N Dec. 388 (BIA, A.G. 1977); *Matter of Koden*, 15 I&N Dec. 739 (BIA 1974; A.G., BIA 1976), *aff'd*, 564 F.2d 228 (7th Cir. 1977).

The respondent has challenged the propriety of these proceedings on two grounds. First, he maintains that the doctrine of laches should apply against the Service to prevent it from pursuing the instant disciplinary proceedings against him. In this regard, he argues that he has been prejudiced by the Service's issuance of the Petition for Attorney Discipline years after his 1983 conviction. He claims that in correspondence to him while he was in prison in California in early 1983, the Service agreed to postpone proceedings to await and rely upon the outcome of California disciplinary proceedings against him. The respondent asserts that he has been prejudiced by the passage of

922

time because neither he nor the Service is now able to locate any record of this correspondence to prove that the Service made this agreement.

Laches is an affirmative defense in which the party raising the defense has the burden of proving that he changed his position to his detriment and prejudice through reliance upon the unreasonable delay in instituting actions against him. *See AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531 (11th Cir. 1986), *cert. denied,* 481 U.S. 1041 (1987); *Matter of Onal,* 18 I&N Dec. 147 (BIA 1981, 1983).

We need not reach the issue of whether the elements of laches have been satisfied in this case, as the respondent has not shown that the equitable doctrine of laches is applicable to these proceedings. The cases cited by the respondent in his brief are not laches cases, but instead are cases which involve the issues of speedy trial and preindictment delay in criminal prosecutions. He has presented no authority for applying laches to the disciplinary proceedings before us. Laches or neglect of duty on the part of officers of the Government generally may not be invoked against the Government when it acts to enforce a public right or protect a public interest. *See United States v. Summerlin,* 310 U.S. 414 (1940); *Guaranty Trust Co. v. United States,* 304 U.S. 126 (1938); *Utah Power & Light Co. v. United States,* 243 U.S. 389 (1917); *Bostwick Irrigation District v. United States,* 900 F.2d 1285 (8th Cir. 1990); *United States v. RePass,* 688 F.2d 154 (2d Cir. 1982); *Matter of K-,* 4 I&N Dec. 480 (BIA 1951). In initiating disciplinary proceedings against the respondent, the Service has expressly alleged pursuant to 8 C.F.R. § 292.3(a) that it is "in the public interest" to do so. Moreover, the record reflects that in their respective attorney disciplinary proceedings, state authorities were not deterred by the passage of time since the respondent's 1983 conviction when they used that conviction as the basis for suspending or disbarring the respondent from the practice of law in 1988 in Maryland and in 1990 in New York and Rhode Island.

The respondent's other argument against the propriety of these proceedings is that the Service instituted them vindictively because of the effectiveness of the respondent's pro bono representation of aliens before the Service and the Service's disappointment over its inability to convince an Assistant United States Attorney to prosecute the respondent for alleged false statements on Notices of Entry of Appearance as Attorney or Representative (Form G-28) ("Notice of Entry of Appearance"). In support of this argument, the respondent submitted copies of briefs and other documents he filed on behalf of clients. He also refers to Service documents indicating that an Assistant United States Attorney was approached by the Service to

review the charges against the respondent of false statements in Notices of Entry of Appearance but declined to prosecute.

This argument of vindictive prosecution is without merit. The grounds for instituting disciplinary proceedings against the respondent are so amply supported by the record that we find no basis whatsoever for reaching out to impute an improper motive to the Service in this regard. The respondent has a felony conviction for multiple offenses involving his representation in immigration cases. This conviction fully justified the Service's institution of proceedings under 8 C.F.R. § 292.3 to protect the "public interest." Moreover, disciplinary authorities in four different jurisdictions, California, Maryland, New York, and Rhode Island, have found the imposition of discipline on the respondent warranted because of this conviction, and their actions in turn provide additional grounds for the Service to charge the respondent in disciplinary proceedings. Further, the record reflects that the 1989 investigation of the respondent, which led to the instant proceedings against him, was begun not because of any success the respondent may have had in representing clients before the Service, but because a Service employee noticed the respondent's appearance as counsel in several cases and questioned why he was still practicing before the Service after having been convicted. In addition, its consultation with an Assistant United States Attorney regarding possible prosecution of the respondent is indicative merely of the Service's exploration of its options in proceeding against the respondent. We do not consider the consultation or the subsequent institution of disciplinary proceedings against the respondent to be vindictive actions on the part of the Service.

We turn now to the specific charges alleged against the respondent in the Petition for Attorney Discipline. The first ground for discipline is predicated upon the respondent's alleged violation of 8 C.F.R. § 292.3(a)(13). Charge I alleges that on January 10, 1983, in the United States District Court for the Southern District of California, having been convicted of the following offenses, the respondent was sentenced to 2 years for each count, to be served concurrently: conspiracy to make false statements, suborn perjury, and steal government property, in violation of 18 U.S.C. §§ 371, 641, 1001, 1621(a), and 1622; making false statements (two counts), in violation of 18 U.S.C. § 1001; and subornation of perjury, in violation of 18 U.S.C. §§ 1621(a) and 1622. Charge I further alleges that at the same hearing, the respondent, having been convicted of theft of government property, in violation of 18 U.S.C. § 641, was placed on probation for a period of 5 years, imposition of sentence having been suspended, on the conditions that he obey all laws and all lawful rules and regulations of the probation department, and that he not engage in the practice of

law until reinstated by the Supreme Court of California. It alleges that the probationary sentence was to be consecutive to the period of incarceration. Charge I is supported by the certified copy of the respondent's criminal judgment which is contained in the record. We therefore find that Charge I has been established by clear, convincing, and unequivocal evidence.

Charges II, III, and IV allege violations of 8 C.F.R. § 292.3(a)(3) in that the respondent willfully misled, misinformed, or deceived an officer or employee of the Service concerning a material and relevant fact in connection with a case. Under Charge II, it is alleged that on or about July 6, 1981, the respondent filed with the Service an Immigrant Visa Petition (Form I-130E), on which it was claimed that Arceli Bautista and Bryce Paul Bell had resided together as husband and wife at 1856 Madera Street, Lemon Grove, California, when the respondent knew that the said marriage was a sham and that the parties had never lived together.

Under Charge III, it is alleged that on or about September 10, 1981, the respondent filed with the Service an Immigrant Visa Petition (Form I-130E), an Application for Status as Permanent Resident (Form I-485H), and an Affidavit of Support (Form I-134) in which it was claimed that Fidel Velez Uy and Sandra Anna Antunez had resided together as husband and wife at 7920 Odell Place, San Diego, California, when the respondent knew that the said marriage was a sham and that the parties had never lived together.

Charge IV alleges that on or about July 6, 1981, the respondent willfully procured, assisted, and suborned Bryce Paul Bell to take an oath in a Service matter to testify truthfully, and contrary to such oath, to state material matters on an Immigrant Visa Petition (Form I-130E) which neither the respondent nor Bryce Paul Bell believed to be true, to wit: that Bryce Paul Bell and Arceli Bautista resided together as husband and wife at 1856 Madera Street, Lemon Grove, California, when the marriage was a sham and Bryce Paul Bell and Arceli Bautista had never lived together.

Charges II, III, and IV match Counts 3, 5, and 12 in the indictment in the respondent's criminal case. A certified copy of this indictment is contained in the record. The respondent's criminal judgment indicates that the respondent was found guilty of Counts 3, 5, and 12 in the indictment. Therefore, based on the supporting evidence of the indictment and the respondent's criminal judgment, we find that Charges II, III, and IV have been established by clear, convincing, and unequivocal evidence.

Charges V and VI are predicated upon alleged violations of 8 C.F.R. § 292.3(a)(7) in that the respondent has been temporarily suspended, and such suspension is still in effect, from practice in any court,

Federal, State (including the District of Columbia), territorial, or insular. Under Charge V, it is alleged that on December 20, 1988, the Court of Appeals of Maryland indefinitely suspended the respondent from the practice of law, with leave to apply for reinstatement at the expiration of 1 year from the date of its order. Charge VI alleges that on September 20, 1990, the Supreme Court of Rhode Island indefinitely suspended the respondent from engaging in the practice of law in Rhode Island.

Charge V is supported by the certified copy of the December 20, 1988, order from the Court of Appeals of Maryland, reflecting that the respondent was suspended indefinitely from the further practice of law in Maryland with leave to apply for reinstatement at the expiration of 1 year from the date of the order. The record also contains a June 26, 1990, order from the Court of Appeals of Maryland in which the court denied the respondent's petition for termination of his indefinite suspension on the grounds that during the period of his indefinite suspension the respondent may have engaged in the practice of law in another jurisdiction in which he was not admitted to practice and in connection therewith made false and misleading statements. Charge VI is supported by a certified copy of the September 20, 1990, order of the Supreme Court of Rhode Island reflecting that the respondent was ordered suspended indefinitely from engaging in the practice of law in Rhode Island. In the disciplinary proceedings before us, the respondent did not raise any issues of fundamental procedural inadequacies or insufficiency of evidence regarding his suspensions from the practice of law in Maryland and Rhode Island. *See Matter of Bogart, supra.* We therefore find that Charges V and VI have been established by clear, convincing, and unequivocal evidence.

The remaining charges, Charges VII through XI, allege that the respondent violated 8 C.F.R. § 292.3(a)(10) by willfully making false and material statements or representations with respect to his qualifications or authority to represent others in any case. Under Charge VII, it is alleged that on or about April 5, 1989, in connection with three Petitions for Alien Relative (Form I-130) by Eliodoro Llanes Quitoriano filed with the Service, the respondent submitted a Notice of Entry of Appearance in which he alleged that he was a member in good standing of the Bars of the States of New York and California, knowing that he had not been registered with or deemed to be in good standing by the Bar of the State of New York since 1982.

In support of Charge VII, the Service offered copies of the three visa petitions and accompanying documents filed by Eliodoro Llanes Quitoriano. Each packet of documents includes a Form G-28 dated April 5, 1989, in which the respondent indicated that he was an

attorney and a member "in good standing" of the bar of the highest court of the States of New York and California.

Also contained in the record is an October 11, 1989, letter to the Service from the State of New York Unified Court System, Office of Management Support, stating that in response to a letter from the Service, it had conducted a search of the New York State Attorney Registration records, maintained by that office pursuant to section 468 of the New York Judiciary Law.[4] The letter advises that the search indicated that the respondent was admitted to the New York Bar in 1973 by the Third Appellate Division of the New York Supreme Court but that he had failed to register as a New York attorney since 1982. According to the letter, the respondent would be unable to obtain a certificate of good standing from the Appellate Division for as long as his registration remained out of date.

In addition, the Service offered a May 22, 1991, letter from Michael J. Novack, Clerk of the New York Supreme Court, Appellate Division, Third Judicial Department, informing the Service that the respondent's name was stricken from the roll of New York attorneys on May 1, 1990, as a result of his 1983 felony conviction, and that the respondent will not be eligible to apply for reinstatement until the expiration of at least 7 years after May 1, 1990. Enclosed with this letter is a copy of the court's May 1, 1990, order. The court's order indicates that the respondent's conviction for making a false statement under 18 U.S.C. § 1001 is cognizable as a felony under New York law for purposes of the automatic disbarment statute[5] and accordingly, the respondent ceased to be an attorney upon his conviction of this crime. The court's order further states that the respondent's failure to report his conviction to that court as required by section 90(4)(c) of the New York Judiciary Law also constituted misconduct which was serious.[6]

---

[4] Section 468-a of the New York Judiciary Law provides that "[a]ttorneys shall register biennially on the dates prescribed by the chief administrator" of the courts. It further states, inter alia, that "[n]oncompliance by an attorney with the provisions of this section and the rules promulgated hereunder shall constitute conduct prejudicial to the administration of justice and shall be referred to the appropriate appellate division of the supreme court for disciplinary action."

[5] The automatic disbarment statute is found at section 90(4)(a) of the New York Judiciary Law, which provides: "Any person being an attorney and counsellor-at-law who shall be convicted of a felony as defined in paragraph e of this subdivision, shall upon such conviction, cease to be an attorney and counsellor-at-law, or to be competent to practice law as such."

[6] Section 90(4)(c) of the New York Judiciary Law provides in pertinent part:
Whenever an attorney shall be convicted of a crime in a court of record of the United States or of any state, territory or district, including this state, whether by a plea of guilty or nolo contendere or from a verdict after trial or otherwise, the attorney shall file, within thirty days thereafter, with the appellate division of the supreme court, the

927

In defense of Charge VII, the respondent submitted the original of a certificate dated September 1, 1987, from Michael J. Novack, Clerk of the State of New York, Appellate Division of the Supreme Court, Third Judicial Department, in which it is certified that the respondent was admitted to practice law by that court on September 5, 1973, and "is currently in good standing and is registered with the Administrative Office of the Courts as required by section four hundred sixty-eight-a of the Judiciary Law." In his brief on appeal, the respondent concedes that he did not pay his registration dues in 1982 or afterward, but asserts that the nonpayment was inadvertent and that the issuance of the certificate of good standing in 1987 proves that his failure to perform this "ministerial act" did not preclude him from remaining a New York attorney in good standing.

We conclude that the violation of 8 C.F.R. § 292.3(a)(10) alleged in Charge VII has been established by clear, convincing, and unequivocal evidence. We find unpersuasive the respondent's argument that the issuance of the certificate of good standing proves that his failure to register since 1982 was only the failure to perform a ministerial act and did not preclude him from being considered a New York attorney in good standing. It appears that the certificate of good standing from the New York Supreme Court, Appellate Division, Third Judicial Department dated September 1, 1987, was issued in error and without knowledge of the respondent's failure to register, as it is rebutted by the October 11, 1989, letter from the Unified Court System, Office of Management Support, the office which maintains the registration records of New York attorneys. This letter states that the respondent was ineligible for a certificate of good standing because he had failed to register as a New York attorney since 1982. In addition, section 468-a of the New York Judiciary Law provides that an attorney's failure to register biennially is a ground for referral of the attorney to the appropriate division of the New York Supreme Court for disciplinary action.

Moreover, the May 1, 1990, court order which struck the respondent's name from the roll of New York attorneys indicates that the respondent was "automatically disbarred" when he received his felony conviction for making a false statement, and that he committed additional professional misconduct by failing to report his conviction to the court within 30 days of its imposition. Thus, in view of the respondent's failure to register as a New York attorney since 1982, his 1983 conviction of a felony which made him subject to the automatic disbarment statute in New York, and his failure to comply with the

_____

record of such conviction. The failure of the attorney to so file shall be deemed professional misconduct ....

requirement that he notify the appellate division of the New York Supreme Court of his conviction, we find that the respondent willfully made a false and material statement or representation when he claimed in Notices of Entry of Appearance dated April 5, 1989, to be an attorney in good standing in New York.

Under the next charge in the Petition for Attorney Discipline, Charge VIII, it is alleged that the respondent violated 8 C.F.R. § 292.3(a)(10) when, on or about April 5, 1989, in connection with three Petitions for Alien Relative (Form I-130) filed by Elidoro Llanes Quitoriano with the Service, the respondent submitted Notices of Entry of Appearance, in which he alleged that he was a member of the Bars of the States of New York and California, willfully concealing his suspension from the Bar of the State of Maryland. It is further alleged that the respondent willfully and falsely represented that he was an attorney within the meaning of 8 C.F.R. § 1.1(f), knowing that he had been suspended from the practice of law in the State of Maryland.

In support of Charge VIII, the Service relied on the December 20, 1988, suspension order from the Court of Appeals of Maryland, which was also the basis of the allegation in Charge V, as well as the Notices of Entry of Appearance, which were also the bases of the allegation in Charge VII. In these Notices of Entry of Appearance, the respondent checked the block which reads as follows:

> I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia (Name of Court) and am not under a court or administrative agency order suspending, enjoining, restraining, disbarring, or otherwise restricting me in practicing law.

On the line designated for "Name of Court," the respondent typed in "New York, & California."

The assistant chief immigration judge found that the Service had not met its burden with regard to Charge VIII. He stated that it was not clear from the wording of the Form G-28 whether an attorney is attesting only to his good standing in the states he lists, or whether he is attesting that he is not under restrictions in any state. The assistant chief immigration judge determined that the respondent's failure to acknowledge the disciplinary action against him in Maryland on the Form G-28 did not amount to willful misrepresentation.

On appeal, the Service contends that the respondent made false and material statements when he indicated on the Notices of Entry of Appearance that he was not under a court or administrative order suspending, enjoining, restraining, disbarring, or otherwise restricting him in practicing law. It is argued that the Notice of Entry of Appearance is the mechanism by which attorneys, as defined in 8 C.F.R. § 1.1(f) (1994), set forth the basis upon which they qualify to

provide representation to individuals before the Service. The Service maintains that the assistant chief immigration judge improperly disregarded the regulatory definition of the term "attorney," set forth at 8 C.F.R. § 1.1(f), when he determined that the respondent did not have an affirmative duty to disclose on the Notice of Entry of Appearance his having been suspended in Maryland.

In defense of Charge VIII, the respondent argues that ambiguity exists even within the definition of an attorney provided in 8 C.F.R. § 1.1(f). He maintains that this ambiguity precludes the Service from establishing by clear, convincing, and unequivocal evidence that he violated 8 C.F.R. § 292.3(a)(10).

Under the provisions of 8 C.F.R. § 292.1, only certain designated individuals are authorized to represent persons before the Service and the Executive Office for Immigration Review. Included in this category are attorneys, as defined in 8 C.F.R. § 1.1(f), which provides as follows:

> The term *attorney* means any person who is a member in good standing of the bar of the highest court of any State, possession, territory, Commonwealth, or the District of Columbia, and is not under any order of any court suspending, enjoining, restraining, disbarring, or otherwise restricting him in the practice of law.

We disagree with the respondent's contention on appeal that an ambiguity exists within the definition of an attorney provided in 8 C.F.R. § 1.1(f). The plain language of the regulation indicates that a person would not satisfy the definition of an attorney if he were subject to *any* order of *any* court which suspended, enjoined, restrained, disbarred, or otherwise restricted him in the practice of law, even if he were still a member in good standing in a court of another jurisdiction. *See Matter of Bogart, supra* (in which proceedings were pursued against an attorney solely on the basis of his suspension from the practice of law in California despite the fact that he purportedly remained an attorney in good standing in New York). Any ambiguity arises from the slight variation in language between 8 C.F.R. § 1.1(f), which refers to "*any* order of *any* court," and the Form G-28, which refers to "*a* court or administrative agency order." (Emphasis added.) Thus, the issue before us is whether an attorney submitting a Form G-28, on which he claims to be an attorney in good standing in the bars of one or more courts, has a duty to disclose that he has also been suspended, enjoined, restrained, disbarred, or otherwise restricted in the practice of law in a court in another jurisdiction which he has not listed.

We conclude that an attorney filing a Form G-28 does have a duty to disclose disciplinary actions or other restrictions on his practice of law in the bars of courts in jurisdictions other than those in which he claims to be in good standing. The slight variation in language between

the Form G-28 and 8 C.F.R. § 1.1(f) notwithstanding, it is clear that the Form G-28 is designed to determine whether an individual is an attorney within the meaning of 8 C.F.R. § 1.1(f). As an attorney who satisfies the definition of an attorney found in 8 C.F.R. § 1.1(f) is the only category of attorney authorized to appear in immigration proceedings, the Notice of Entry of Appearance form must necessarily apply that definition when an individual's eligibility to appear as an attorney in those same proceedings is being determined based on the form.

In addition, we note that unlike state bars, the Board of Immigration Appeals does not have a formal application process and admission fee,[7] conduct investigations or written examinations to determine an applicant's fitness to practice, or send out annual registration statements for attorneys to return with updated information on bar admissions and disciplinary actions. Indeed, the Board does not even require documentary proof from an attorney of his admission to whatever state bar he claims to belong to. Instead, we rely entirely on the attorney's representations in the Notice of Entry of Appearance. Because an attorney is our only source of information regarding his own eligibility to appear as an attorney within the meaning of 8 C.F.R. § 1.1(f), we must rely on him to disclose on the Form G-28 when he is no longer eligible to appear in immigration proceedings, or to simply refrain from appearing in immigration proceedings as long as his ineligibility exists.

Moreover, our interpretation of the Form G-28 as applying the definition of an attorney set forth in 8 C.F.R. § 1.1(f) is supported by the other Notices of Entry of Appearance currently in use in immigration proceedings. The Form G-28 is the Notice of Entry of Appearance form used for representation in proceedings before the Service. Different Notices of Entry of Appearance forms are used for representation in proceedings before an immigration judge (Form EOIR-28) and for representation in proceedings before the Board (Form EOIR-27). Both of these forms were prescribed for use beginning in January 1989 and are almost identical to the Form G-28 on the front side of the forms, including the block which an attorney checks to indicate that he is an attorney in good standing. The reverse side of the Form EOIR-28 and the Form EOIR-27, however, contain language which is not included on the Form G-28, which was last revised in 1979. This language consists of an enumeration of the

---

[7] At one time there was a general requirement that persons who sought to practice before the Service submit an application, be admitted to practice, and pay a $25 fee. *See* section 281(7) of the Immigration and Nationality Act, 8 U.S.C. § 1351(7) (1964), *repealed by* Act of Oct. 21, 1968, Pub. L. No. 90-609, § 1, 82 Stat. 1199.

categories of persons entitled to serve as representatives. Among the categories listed is "Attorneys in the United States. An 'attorney' is defined in 8 C.F.R. § 1.1(f)." Thus, the Form EOIR-28 and the Form EOIR-27, which seek the same type of information as the Form G-28, expressly require that an attorney submitting the form be able to satisfy the definition of an attorney found in 8 C.F.R. § 1.1(f). It is logical to interpret the Form G-28 as imposing the same requirement.

We therefore conclude that the respondent had a duty to disclose on any Form G-28 which he submitted whether he met the qualifications of an attorney as provided in 8 C.F.R. § 1.1(f). In other words, he was under an obligation to specify whether he was under any order of any court suspending, enjoining, restraining, disbarring, or otherwise restricting him in the practice of law so as to disqualify him from appearing in immigration proceedings. When he submitted his Form G-28 on April 5, 1989, with each of the three visa petitions filed by Elidoro Llanes Quitoriano, he only indicated that he was a member in good standing of the bars of the highest courts in New York and California. He willfully and falsely represented that he was an attorney within the meaning of 8 C.F.R. § 1.1(f) when he concealed that he had been suspended from the practice of law in Maryland in 1988. Thus, we find that the violation of 8 C.F.R. § 292.3(a)(10) alleged in Charge VIII has been established by clear, convincing, and unequivocal evidence.

Charges IX, X, and XI allege violations of 8 C.F.R. § 292.3(a)(10) involving the respondent's use of letterhead on which was printed the jurisdictions in which the respondent was purportedly admitted to practice. Charge IX alleges that on or about October 19, 1989, in connection with a case, the respondent sent to Immigration Judge Nejelski of the Executive Office of Immigration Review in Arlington, Virginia, a letter in which the respondent represented that he was admitted to practice in Maryland and New York, knowing that he had not been registered with or deemed to be in good standing by the Bar of the State of New York since 1982. It is further alleged that he willfully and falsely represented that he was an attorney within the meaning of 8 C.F.R. § 1.1(f), knowing that he had been suspended from the practice of law in the State of Maryland.

Charge X alleges that on or about February 21, 1990, the respondent sent a letter to the Clerk of the Court, Executive Office for Immigration Review, Arlington, Virginia, about the same case as that in Charge IX, and that in the letter he made the same representations about being admitted to practice in Maryland and New York which are alleged against him in Charge IX.

Charge XI alleges that on or about November 25, 1990, the respondent sent to Alberto Gonzalez, Special Assistant United States

Attorney for the Northern District of California in connection with the matter of *Talens v. Thornburg*, a letter in which he represented that he was admitted to practice in Maryland and Rhode Island, willfully concealing his suspensions from the Bars of the States of Maryland and Rhode Island. It is further alleged that the respondent falsely represented that he was an attorney within the meaning of 8 C.F.R. § 1.1(f), knowing that he had been suspended from the practice of law in the States of Maryland and Rhode Island.

In support of Charge IX, the Service offered a letter dated October 19, 1989, from the respondent to Immigration Judge Nejelski of the Executive Office for Immigration Review in Arlington, Virginia, requesting a hearing date for his client to discuss the Service's failure to respond to her Freedom of Information Act request. The letter is typed on letterhead at the top of which is printed the respondent's name, addresses, telephone numbers, and the notation, "Admitted to Practice Maryland, Pennsylvania, New York, Rhode Island, California & Trust Territory of the Pacific Islands."

For Charge X, the Service offered a letter dated February 21, 1990, from the respondent to the Clerk of the Court, Executive Office for Immigration Review, Arlington, Virginia, transmitting an asylum application and supporting documents on behalf of a client, and informing the court of his new office mailing address. The letter is typed on letterhead, at the top of which is printed the respondent's name, addresses, telephone numbers, and the same notation about the jurisdictions in which he was admitted to practice as appears in the October 19, 1989, letter.

In support of Charge XI, the Service offered a letter dated November 25, 1990, telecopied by the respondent to Alberto Gonzalez, Special Assistant United States Attorney, discussing the proceedings in *Talens v. Thornburg*, pending in the United States District Court for the Northern District of California. From the context of the letter, it appears that the respondent and Mr. Gonzalez were opposing counsel in the case. The original letter was typed on letterhead at the top of which is printed the respondent's name, addresses, telephone numbers, and the notation, "Admitted to Practice Maryland, Pennsylvania, Rhode Island, California, Trust Territory of the Pacific Islands."

In defense of Charges IX, X, and XI, the respondent argues that he did not violate 8 C.F.R. § 292.3(a)(10) because he made no misrepresentation of a material fact. He contends that as he was not soliciting the business of any of the people to whom the letters in those charges were addressed, the representations about the bars to which he was admitted were not material. The respondent cites several criminal cases and maintains that the governing definition of materiality is

whether a statement has the natural tendency to influence the decision of the tribunal which makes the decision. He argues that since the matter for decision before the tribunal is the application or petition of the client rather than of counsel, the letterhead of counsel cannot possibly influence the adjudicatory process.

In his argument that the representations at issue in Charges IX, X, and XI were not material, the respondent uses the definition of materiality applied in criminal cases involving 18 U.S.C. § 1001. In such cases, the test for materiality is whether the false statement has a tendency to influence or is capable of influencing a federal agency. *United States v. Brantley*, 786 F.2d 1322 (7th Cir.), *cert. denied*, 477 U.S. 908 (1986); *see also United States v. Beer*, 518 F.2d 168 (5th Cir. 1975). As we have observed, the definition of materiality applied in criminal cases involving 18 U.S.C. § 1001 is more expansive than that typically applied in immigration proceedings involving issues of material misrepresentation. *See Matter of Martinez-Lopez*, 10 I&N Dec. 409 (BIA 1962; A.G. 1964). There is no authority defining materiality for the express purposes of 8 C.F.R. § 292.3(a)(10), however. Moreover, the United States Supreme Court has indicated, in the naturalization context, that the materiality definition used in 18 U.S.C. § 1001 cases should be applied rather than the more restrictive immigration definition. *See Kungys v. United States*, 485 U.S. 759, 770-72 (1988). We therefore adopt the definition of materiality used for 18 U.S.C. § 1001 cases in order to determine whether a false statement or representation is material for the purposes of 8 C.F.R. § 292.3(a)(10). Thus, we hold that a false statement or representation is material under 8 C.F.R. § 292.3(a)(10) if it has a tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed.

The issue before us with regard to Charges IX and X is whether the false representations alleged in these charges were material so as to constitute violations of 8 C.F.R. § 292.3(a)(10).[8] These representations were the respondent's indication on his letterhead that he was admitted to practice law in Maryland and New York when in fact he had been suspended from the practice of law in Maryland, and he was not an attorney in good standing in New York. Applying the definition of materiality set forth above, we must now determine whether these false representations had a tendency to influence, or were capable of influencing, the decisions of the immigration judge and the court clerk to whom the letters containing the false representations were addressed. We find that they did not.

---

[8] We are satisfied that the representations were false, and on appeal the respondent has not contested these charges on this basis.

The respondent's conduct in using letterhead that misrepresented the jurisdictions in which he was authorized to practice was clearly unethical. *See, e.g.,* Model Rules of Professional Conduct Rules 7.1, 7.5 (1992). Moreover, as the respondent suggests on appeal, these representations would have undoubtedly been material as to someone who was induced by them to retain the respondent to perform legal services. However, the only possible impact on the immigration judge and the court clerk, to whom the letters in Charge IX and X were addressed, would seem to be whether the respondent appeared to them to be eligible under 8 C.F.R. § 1.1(f) to represent clients in immigration proceedings. We need not decide whether such a determination of the respondent's eligibility by either Executive Office for Immigration Review employee would be a "decision" as contemplated by the definition of a "material" representation as one having a tendency to influence, or being capable of influencing, the decision of the decision-making body to which it was addressed. Even if we assume that a determination of the respondent's eligibility by the immigration judge or the court clerk would constitute a decision by a decision-making body, we would still find that materiality has not been established here because the representation alleged would not have provided them with the information necessary to make such a determination.

It is not clear how the respondent's representations on his letterhead as to the jurisdictions in which he was admitted to practice, whether true or false, would have alerted the immigration judge and the court clerk to his ineligibility under 8 C.F.R. § 1.1(f). No authority has been presented to show that there exists a duty to disclose disciplinary actions in other jurisdictions on one's letterhead similar to the duty to disclose which we have found applicable to a Notice of Entry of Appearance. Thus, even if the respondent had not made the false representations on his letterhead, the immigration judge and the court clerk would still have considered him eligible to practice under 8 C.F.R. § 1.1(f) because there would have been no indication on the letterhead of any grounds for his ineligibility. Even without Maryland and New York on the list of jurisdictions in which the respondent was admitted to practice, four jurisdictions would still have remained on the letterhead to make it appear that the respondent did meet the definition of an attorney in 8 C.F.R. § 1.1(f). In other words, the immigration judge and the court clerk would have conducted themselves in the same way whether or not the false representation appeared in the letterhead; under either scenario, they would have assumed that the respondent was eligible under 8 C.F.R. § 1.1(f) to represent his client in immigration proceedings. Therefore, the Service has not established by clear, convincing, and unequivocal evidence that the false representations alleged in Charges IX and X influenced

935

any decisions on the part of the immigration judge and the court clerk so as to qualify as material. We find that Charges IX and X have not been sustained.

We further find that the last charge, Charge XI, also has not been sustained. Under Charge XI, the respondent allegedly sent a Special Assistant United States Attorney correspondence on printed letterhead reflecting that the respondent was authorized to practice law in Maryland and Rhode Island when he was under orders of suspension in those jurisdictions, thus falsely representing that he was an attorney within the meaning of 8 C.F.R. § 1.1(f). The record does not indicate that these false representations were material as to the Special Assistant United States Attorney, however; as with Charges IX and X, it has not been shown that the false representations alleged in Charge XI had a tendency to influence, or were capable of influencing, any decision of the person to whom the letter was addressed.

In this regard, we note that the forum of the case about which the respondent was corresponding with the Special Assistant United States Attorney was not an immigration court, but rather was a federal district court, that of the Northern District of California. Whether the respondent was an attorney within the meaning of 8 C.F.R. § 1.1(f) was irrelevant to his entitlement to represent clients in a district court, which has its own rules regarding admission to practice and attorney discipline. *See Matter of Abrams*, 521 F.2d 1094 (3d Cir.), *cert. denied*, 423 U.S. 1038 (1975), and cases cited therein; *see also Matter of Roberts*, 682 F.2d 105 (3d Cir. 1982). In addition, as the record contains no evidence about the specific procedures prescribed by the United States District Court for the Northern District of California for the admission, practice, and discipline of attorneys which were in effect on November 25, 1990, it has not been shown that the respondent was in violation of any of the court's requirements because of his suspensions in Maryland and Rhode Island at the time. We therefore find that the violation of 8 C.F.R. § 292.3(a)(10) alleged in Charge XI has not been established by clear, convincing, and unequivocal evidence.

Having found that the record establishes by clear, convincing, and unequivocal evidence that the respondent committed the violations alleged in Charges I through VIII, we are of the opinion that the respondent should be suspended from the practice of law before the Service and the Executive Office for Immigration Review for a period of 10 years, subject to his establishing that he is no longer under discipline by the bars of any state courts. We recognize that the suspension we are imposing is for a longer period than that set by the assistant chief immigration judge. In his opinion, however, the assistant chief immigration judge did not explain his reasons for

936

arriving at the length of suspension which he deemed appropriate. He also made findings which differ somewhat from those which we have made. Moreover, we are not merely reviewing the decision of the assistant chief immigration judge. Instead, we are conducting a de novo review of the record. *See* 8 C.F.R. § 292.3(b)(1)(vi) (stating that the Board shall consider the record and render a decision).

In our de novo review, we have considered the respondent's argument that no additional discipline is warranted in view of his prior suspension from the practice of law in any jurisdiction from January 1, 1983, until April 17, 1987, under the terms of the disciplinary order entered by the Supreme Court of the State of California and in view of his successful completion of the suspension imposed by that court. We have also considered the respondent's claims of rehabilitation and his explanation of the circumstances of his criminal offenses which he has offered as extenuation in briefs he submitted to the assistant chief immigration judge and in other disciplinary proceedings.

Yet we do not find that the factors argued by the respondent overcome the facts underlying his conviction, which included involvement in a conspiracy to violate immigration laws, making false statements to the Service, suborning perjury, and stealing government property. In addition, we note that the record reflects that the respondent has been less than forthcoming with this Board and with the state bars in various jurisdictions in that he did not report his conviction to us, and there is no indication that he reported his conviction to state bar authorities outside of California. The record also shows that the respondent misrepresented his qualifications or authority to represent others in immigration proceedings on Notices of Entry of Appearance.

Thus, we find that suspension from the practice of law before the Service and the Executive Office for Immigration Review is an apt sanction in this case, as the offenses for which the respondent was convicted and suspended from practice in various states arose out of his abuse of his position as a licensed attorney representing others in legal proceedings. Given that his offenses involved violations of the immigration law which the Service and the Executive Office for Immigration Review administer, they are particularly reprehensible from our perspective and warrant a suspension from the practice of law before these agencies for a period of 10 years. Accordingly, the following order will be entered.

**ORDER:** The respondent is suspended from the practice of law before the Immigration and Naturalization Service and the Executive Office for Immigration Review for a period of 10 years, subject to his establishing that he is no longer under discipline by the bars of any state courts.